802 F.Supp. 804 (1992)
In re CRAZY EDDIE SECURITIES LITIGATION.
OPPENHEIMER-PALMIERI FUND, L.P., Entertainment Marketing, Incorporated, and Elias Zinn, Plaintiffs,
v.
PEAT MARWICK MAIN & CO., KMG Main Hurdman, Eddie Antar, Sam Antar, Mitchell Antar, Eddy Antar, Sam E. Antar, Solomon E. Antar, David V. Panoff, Isaac Kairey, Steve Pasquariello, William H. Saltzman, James H. Scott, Jr., Edmond Levy, and Carl G. Zimel, Defendants.
CRAZY EDDIE, INC., Plaintiff,
v.
PEAT MARWICK MAIN & CO., Defendant.
Nos. 87 C 33, 88 C 3481 and 92 C 0075.
United States District Court, E.D. New York.
September 4, 1992.
*805 *806 *807 *808 Sirota & Sirota (Howard B. Sirota, of counsel), Milberg, Weiss, Bershad, Specthrie & Lerach, Pomerantz, Levy, Haudek, Block & Grossman, Stull, Stull & Brody, Lowey, Dannenberg, Bemporad, Brachtl & Selinger, P.C., Kaufman, Malchman, Kaufman & Kirby, Law Offices of Harvey Greenfield, Christopher Lovell, P.C., Law Offices of Joseph H. Weiss, Abbey & Ellis, New York City, for class plaintiffs.
Milbank Tweed Hadley & McCloy (C. Stephen Howard, Suzanne Toes, of counsel) Los Angeles, Cal., New York City, for plaintiff Oppenheimer-Palmieri Fund Ltd.
Tuttle & Taylor, Los Angeles, Cal., for plaintiffs Elias Zinn, Victor Palmieri, Entertainment Marketing and Oppenheimer-Palmieri Fund.
Folkenflik & McGerity (Max Folkenflik, of counsel), New York City, for plaintiffs Entertainment Marketing Inc. and Elias Zinn.
Cadwalader, Wickersham & Taft (Howard R. Hawkins, Jr., of counsel), New York City, for Crazy Eddie, Inc.
Shearman & Sterling (Joseph McLaughlin, of counsel), New York City, for defendants Peat Marwick Main & Co. and KMG Main Hurdman.
Kaye, Scholer, Fierman, Hays & Handler (Steven Glassman, of counsel), New York City, for defendant Oppenheimer & Co., Inc.
Davis, Markel & Edwards (Thomas J. Sweeney, III, of counsel) New York City, for defendant Peat Marwick Main & Co.
Weil, Gotshal & Manges (Dennis J. Block, of counsel), New York City, for defendants Salomon Brothers, Inc., Bear Stearns & Co., and Wertheim Schroder & Co., Inc.
Wilson Elser Moskowitz Edelman & Dicker (Richard Oelsner, of counsel), New York City, for defendants Penn and Horowitz, J. Liebman & Co., Gary Perlmutter and Mark Halperin.
Hoffman & Pollok, New York City, for defendant Jacob Tambor, Sasson Cohen and Zazy International Corp.
Rosenman & Colin, New York City, for defendants Leonard Rubin, Richard Portnoy and Wren Distributing Co.
Kronish, Lieb, Weiner & Hellman (William O'Brien, Justin N. Feldman, William J. Schwartz, Ivan Kline, of counsel) New York City, for defendant Eddie Antar.
Warner & Joselson (Jonathon D. Warner, Sheryl L. Bregman, of counsel) New York City, for defendant Sam E. Antar.
Beldock Levine & Hoffman (Brian E. Mass, of counsel) New York City, for defendant Isaac Kairey.
Leader & Berkon (Frederick D. Berkon, of counsel), New York City, for defendants Solomon E. Antar, Eddy Antar, Steve Pasquariello, Edmond Levy and Carl G. Zimel.
Friedman & Kaplan, New York City, for defendant Eddie Gindi.
David M. Rubin, New York City, for defendant Abraham Grinberg.
Morgan, Lewis & Bockius (Kevin T. Rover, of counsel), New York City, for defendant David V. Panoff. *809 Kelley, Drye & Warren (John P. Marshall, of counsel), New York City, for defendant James H. Scott, Jr.
Jean Cocchiara, pro se.
Kathleen Morin, pro se.
William H. Saltzman, pro se.
David Neiderbach, pro se.
Arnold Spindler, pro se.
Hellring Lindeman Goldstein & Siegal (Stephen L. Dreyfuss, Matthew E. Moloshok, of counsel), Newark, N.J., for defendants Danielle Antar, Deborah Rosen Antar, Gabrielle Antar, Simone Antar, Nicole Antar and Noelle Antar.
Law Offices of Raoul Lionel Felder, P.C., New York City, for defendant Deborah Rosen Antar.
Gersten, Savage, Kaplowitz & Curtin, New York City, for defendants Michelle Antar, Rose Antar, Rose M. Antar, Rori Antar, Sam A. Antar, Sam M. Antar, Adam Kuszer, Benjamin Kuszer, Ellen Kuszer, Simon Kuszer and Lillian Rosen.
Kostelanetz Ritholz Tigue & Fink, New York City, for defendants Rose Antar and Sam M. Antar.
Andrew J. Maloney, U.S. Atty., Brooklyn, N.Y. (Stephen J. Riegel, of counsel), for U.S.

MEMORANDUM AND ORDER
NICKERSON, District Judge:
Numerous memoranda and orders have recounted the facts of this litigation. The court assumes familiarity with its previous published memoranda and orders dated December 30, 1988, Bernstein v. Crazy Eddie, Inc., 702 F.Supp. 962 (E.D.N.Y.1988) (the 1988 Order); June 16, 1989, In re Crazy Eddie Sec. Litig., 714 F.Supp. 1285 (E.D.N.Y.1989) (the 1989 Order); June 19, 1990, In re Crazy Eddie Sec. Litig., 740 F.Supp. 149 (E.D.N.Y.1990) (the June 1990 Order); September 19, 1990, In re Crazy Eddie Sec. Litig., 747 F.Supp. 850 (E.D.N.Y.1990) (the September 1990 Order); March 6, 1991, In re Crazy Eddie Sec. Litig., 135 F.R.D. 39 (E.D.N.Y.1991) (the 1991 Order); and May 1, 1992, In re Crazy Eddie Sec. Litig., 792 F.Supp. 197 (E.D.N.Y.1992) (the May 1992 Order).
The court has before it motions by various defendants for partial summary judgment of the claims brought against them under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, as well as common law claims for fraud and negligent misrepresentation. In its May 1992 Order the court reserved decision on these issues pending argument on the constitutionality of a relevant statute.
Also before the court is a motion for summary judgment by defendant Peat Marwick Main & Co. (Peat Marwick) on its cross-claim against defendant Sam E. Antar. There are also motions by Peat Marwick directed to claims in Crazy Eddie, Inc. v. Peat Marwick Main & Co., the Adversary Proceeding brought in the United States Bankruptcy Court for the Southern District of New York. That proceeding has been transferred to this court and consolidated for pre-trial purposes with this litigation.

I

THE FRAUD CLAIMS
Peat Marwick, Wertheim Schroder & Co., Inc. (Wertheim), Bear Stearns & Co. (Bear Stearns), Salomon Brothers, Inc. (Salomon), and Oppenheimer & Co., Inc. (Oppenheimer) seek dismissal of the claims against them under Section 10(b) of the Exchange Act, Rule 10b-5, and principles of common law fraud and negligent misrepresentation, to the extent those claims are based upon (a) a September 13, 1984 public offering of Crazy Eddie stock underwritten by Oppenheimer, (b) the December 1985 and March 1986 so-called "Oppenheimer Prospectus" sales of Crazy Eddie stock by Oppenheimer, and (c) the June 1986 public offering of Crazy Eddie debentures by Wertheim, Bear Stearns and Salomon.
The motion does not affect claims based on the March 13, 1985 public offering of Crazy Eddie stock by Oppenheimer or the March 7, 1986 public offering of Crazy Eddie stock by Wertheim, Bear Stearns and Salomon.

*810 A. The Section 10(b) and Rule 10b-5

Defendants urge that plaintiffs' Section 10(b) and Rule 10b-5 claims are barred by the statute of limitations.
Because Section 10(b) contains no express statute of limitations the courts had typically applied analogous limitations periods of the forum state.
In the 1988 Order this court suggested its agreement with In re Data Access Sys. Sec. Litig., 843 F.2d 1537 (3d Cir.) (en banc), cert. denied, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), that courts should apply to Section 10(b) claims statutes of limitations governing other sections of the Exchange Act rather than state limitations periods. Bernstein v. Antar, 702 F.Supp. 962, 980-81 (E.D.N.Y.1988).
In the September 1990 Order the court declined to apply the federal limitations period retroactively because plaintiffs had reasonably relied on the old rule. In re Crazy Eddie Sec. Litig., 747 F.Supp. 850, 857-58 (E.D.N.Y.1990). The court relied on the Supreme Court's analysis in Chevron Oil Co. v. Huson, 404 U.S. 97, 106-7, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). That case held that a new rule of law should not be applied retroactively if retaining the old rule solely for the purpose of the pending case would not retard the new rule's purpose and effect and if retroactivity would be inequitable.
In November, 1990 the Second Circuit adopted the federal statute of limitations, but because the claims in that case were time-barred under both the new rule and the old rule the court left open all questions of retroactivity. Ceres Partners v. GEL Assoc., 918 F.2d 349, 364 (2d Cir. 1990). In Welch v. Cadre Capital, 923 F.2d 989 (2d Cir.1991) ("Welch I"), vacated and remanded sub nom. Northwest Savings Bank v. Welch, ___ U.S. ___, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991), the Second Circuit relied on a Chevron Oil analysis and declined to apply the new limitations period retroactively to bar the complaint.
On June 20, 1991 the Supreme Court held that Section 10(b) claims were governed by a federal statute of limitations of one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation. Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, ___ U.S. ___, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). The Court applied the rule to the litigants in the case.
On the same day the Supreme Court decided James B. Beam Distilling Co. v. Georgia, ___ U.S. ___, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), holding that "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata," id. at ___, 111 S.Ct. at 2448, and that it is therefore "error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so." Id. at ___, 111 S.Ct. at 2446. Justice Souter, who announced the judgment, saw the retroactivity question as a "choice of law" matter in which "principles of equity and stare decisis" prevail over claims based on a Chevron Oil analysis. Id. at ___, 111 S.Ct. at 2446.
On September 5, 1991 defendants moved for summary judgment as to the Section 10(b) and Rule 10b-5 claims on the basis of Lampf and Beam. Under those decisions this court would have granted defendants' motion. See Welch v. Cadre Capital, 946 F.2d 185 (2d Cir.1991) ("Welch II") (barring complaint after remand in light of Lampf and Beam).
But on December 19, 1991 the President signed the Federal Deposit Insurance Corporations Improvement Act of 1991, Pub. Law 102-242, 105 Stat. 2236, codified as 15 U.S.C. § 78aa-1. Section 476 of that legislation amends Section 27A of the Securities Exchange Act of 1934 to provide that:
The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.
*811 The legislation's manifest purpose was to give investors who brought Section 10(b) actions before the Lampf and Beam decisions more time than the Supreme Court would have afforded to bring the claims. See S.Rep. No. 102-167, 102d Congress, 1st Sess. (1991).
By letter dated April 9, 1992, defendants asked the court to consider the constitutionality of Section 27A. By order dated April 24, 1992, the court ordered the parties to address the issue, and pursuant to 28 U.S.C. § 2403 the court also certified to the United States Attorney General the question of the statute's constitutionality. On August 24, 1992 the United States submitted a statement of interest arguing in favor of constitutionality but declining to intervene in the action.
Defendants say that Section 27A is an unconstitutional exercise of power by Congress to alter the outcome of particular cases. The Second Circuit declined to address this question until it was squarely presented to that court. Henley v. Slone, 961 F.2d 23, 26 (2d Cir.1992). But one panel of the court suggested its view that the statute was constitutional. Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb, Inc., 967 F.2d 742, 752 n. 6 (2d Cir. 1992) ("we are unimpressed by the cogency" of analyses finding unconstitutional Section 27A).
In this circuit district courts confronting the issue have found the statute constitutional. See Adler v. Berg Harmon Assoc., 790 F.Supp. 1235 (S.D.N.Y.1992) (Conner, J); Brown v. Hutton Group, 795 F.Supp. 1307 (S.D.N.Y.1992) (Conner, J); Axel Johnson, Inc. v. Arthur Andersen & Co., 790 F.Supp. 476 (S.D.N.Y.1992) (Lasker, J.); Kalmanson v. McLaughlin, No. 86 CV 9366, 1992 WL 190139 (S.D.N.Y. July 27, 1992) (Keenan, J.).
Other district courts are divided on the issue. Compare, e.g., In re Brichard Sec. Litig., 788 F.Supp. 1098 (N.D.Cal.1992) (finding Section 27A unconstitutional); Bank of Denver v. Southeastern Capital Group, Inc., 789 F.Supp. 1092 (D.Colo. 1992) (same); Bankard v. First Carolina Communications, Inc., No. 89 CV 8571, 1992 WL 3694, 1992 U.S.Dist. LEXIS 53 (N.D.Ill.1992) (upholding Section 27A).
This court agrees with the courts that have found Section 27A constitutional, primarily for the reasons stated in Adler v. Berg Harmon Assoc., 790 F.Supp. 1235 (S.D.N.Y.1992) and Axel Johnson, Inc. v. Arthur Andersen & Co., 790 F.Supp. 476 (S.D.N.Y.1992). No purpose would be served by rehearsing those reasons here.
The court thus adheres to its previous decision not to apply the limitations period retroactively. Although after the Beam decision the contours of the Chevron Oil test are unclear, that case has not been overruled. Moreover, Section 27A mandates that the court apply the principles of retroactivity as they existed before June 19, 1991. The court had already held by that date that plaintiffs had reasonably relied on the prior law adopting state statutes of limitations when they filed this action in 1987. The Section 10(b) claims are therefore timely.

B. The Common Law Claims

The argument for summary judgment dismissing plaintiffs' common law fraud and negligent representation claims is based on the contention that plaintiffs are unable to prove that they relied upon any of defendants' allegedly false or misleading statements.
Reliance is an element of both a common law fraud claim and a negligent misrepresentation claim under the laws of the two states whose law various parties seek to apply, New York and New Jersey. See, e.g., Jo Ann Homes at Bellmore, Inc. v. Dworetz, 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214, 217 (1969) (reliance by plaintiff is an element of misrepresentation in New York); Harris v. Camilleri, 77 A.D.2d 861, 431 N.Y.S.2d 65 (2d Dep't 1980) (reliance is an essential element of a fraud claim in New York); In re Orfa Sec. Litig., 654 F.Supp. 1449 (D.N.J.1987) (reliance is an element of fraud under New Jersey law).
On March 6, 1991 the court granted a motion for class certification and recognized *812 that the common law claims may implicate the laws of more than one state. In re Crazy Eddie Sec. Litig., 135 F.R.D. 39 (E.D.N.Y.1991). As the court said, individual questions of reliance should not defeat the common law claims of the class members who did so rely. See, e.g., In re LILCO Sec. Litig., 111 F.R.D. 663, 670 (E.D.N.Y.1986). Individual questions of reliance can be adjudicated through the use of subclasses or separate trials if necessary. See In re Crazy Eddie Sec. Litig., 135 F.R.D. at 41.
Plaintiffs have submitted no authority for the proposition that class certification should modify the elements of common law fraud or minimize plaintiffs' burden at trial. One federal court has adopted a fraud on the market theory for a New York state fraud claim, but noted an absence of state court holdings on the issue. See Minpeco, S.A. v. Hunt, 718 F.Supp. 168, 176 (S.D.N.Y.1989). This court has found no judicial authority in New York or New Jersey signalling a shift in the law in those states.
Reliance may be presumed for purposes of class certification "subject to such proof as is required on the trial." Weinberg v. Hertz Corp., 116 A.D.2d 1, 7, 499 N.Y.S.2d 693, 696 (1st Dep't 1986), aff'd on other grounds, 69 N.Y.2d 979, 516 N.Y.S.2d 652, 509 N.E.2d 347 (1987). On this motion for summary judgment the court must determine whether such proof exists.
To satisfy the reliance requirement plaintiffs must come forth with "clear and convincing evidence" that at least one plaintiff relied on defendants' allegedly misleading statements. Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970-71 (2d Cir.1987).
Plaintiffs have not met their burden with respect to underwriters Bear Stearns, Wertheim, Salomon, and Oppenheimer. Only one named plaintiff mentions having seen a prospectus before he purchased Crazy Eddie shares.
At his deposition James Cain said that before he purchased Crazy Eddie shares on June 17, 1986 he called Crazy Eddie to get a prospectus, received it, and read it. He did not identify which of the various prospectuses he read, or whether it was one of the "Oppenheimer Prospectuses" or a prospectus for a sale underwritten by Bear Stearns, Wertheim, and Salomon. Thus Cain is unable to point to a particular defendant whose statements he read. Nor does Cain state anywhere in his deposition that he relied on the prospectus before purchasing his shares. Cain's testimony is insufficient to create genuine issue of reliance.
The evidence of reliance on statements made by Peat Marwick as Crazy Eddie's auditor is only slightly stronger. Peat Marwick certified Crazy Eddie's financial statements for 1983, 1984, and 1985. This information was included in Crazy Eddie's Annual Reports and 10-K statements, which several plaintiffs recall reading before they purchased shares. The fact that plaintiffs cannot link the information they read to Peat Marwick, which had audited the most recent financial statements in those reports and statements, is not fatal to their claims. Plaintiffs may have read and relied on Peat Marwick's statements without knowing that Peat Marwick was the auditor.
The greater weakness in plaintiffs' proof is that there is no deposition testimony by any plaintiff that he or she relied on any of these statements when purchasing shares. Plaintiffs have had adequate opportunity to develop their proof in discovery. In response to defendants' request for production of specific documents upon which plaintiffs relied or even saw prior to purchasing Crazy Eddie shares, plaintiffs did not produce a single document. Compelled by court order in 1988 to fully respond to defendants' interrogatories, plaintiffs identified only general categories of documents they had seen. Not one plaintiff identified a document he or she relied upon.
Although plaintiffs may have seen or read Crazy Eddie's financial statements, not one plaintiff stated at any time that he or she relied upon them in purchasing Crazy *813 Eddie securities. See In re Sahlen & Assoc., Inc. Sec. Litig., 773 F.Supp. 342, 371 (S.D.Fla.1991) (reliance not adequately pleaded when plaintiffs have not stated "which of them read and relied on which particular statements made by Defendants").
There may be members of the class who can prove that they actually relied on defendants' statements. No such person has come forward. Plaintiffs have not sought leave to amend the complaint to include such a person. Nor do plaintiffs in their briefs suggest how the court might protect the interests of those potential claimants should it find that the named representatives cannot prove reliance. These facts suggest that the named plaintiffs cannot represent adequately the interests of the class members who have common law claims against defendants.
Because no named plaintiff has a common law claim on his or her own behalf, and because the named plaintiffs are unable to represent adequately class members who have such claims, if any such claimants exist, the common law claims are dismissed.
This dismissal should not prevent those who have proper common law claims from recovering against defendants. American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) and Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), held that the statute of limitations is tolled as to the individual claims of class members for the period in which a trial court considers class certification.
The Court of Appeals for the Second Circuit has decided that this holding does not extend to tolling the statute of limitations for an action brought on behalf of a class after class certification has been denied or limited for lack of common issues of fact or law or typical claims. Korwek v. Hunt, 827 F.2d 874, 879 (2d Cir.1987). The court was concerned that counsel might "piggy-back" one class action onto another and thereby toll the statute of limitations indefinitely.
These concerns are not present where the court certifies a class action but later concludes, at the completion of discovery, that the named plaintiffs cannot prove an element of certain claims brought on behalf of the class and are therefore unable to represent adequately the interests of unnamed class members who may have such claims. In such a case a second class action would not be an attempt to relitigate the question of class certification by filing repetitive claims. See Schur v. Friedman & Shaftan, P.C., 123 F.R.D. 611, 613 (N.D.Cal.1988). Korwek should not prevent the tolling of the statute of limitations as to those class members who have proper common law claims against the defendants. See also Rose v. Arkansas Valley Environmental & Utility Authority, 562 F.Supp. 1180, 1192 (D.Mo.1983).
The common law claims for fraud and negligent misrepresentation are dismissed.

II.

PEAT MARWICK'S CROSS-CLAIM AGAINST SAM E. ANTAR
Peat Marwick moves for summary judgment on its cross-claim against Sam E. Antar (Antar) for common law fraud or for contribution. Antar opposes the motion. The class plaintiffs have also submitted a brief in opposition to Peat Marwick's motion, although they appear to have no standing to oppose it. Antar cross-moves for an order dismissing Peat Marwick's cross-claim against him.
In its cross-claim Peat Marwick alleges that Antar and others violated their duties and obligations to provide Peat Marwick with accurate, truthful and complete information concerning Crazy Eddie and its financial statements, and engaged in a deliberate course of fraudulent, reckless or negligent wrongdoing with the purpose of misleading and deceiving Peat Marwick and others as to Crazy Eddie's financial condition.

A. Claim for Common Law Fraud
To support a claim for common law fraud Peat Marwick must show by *814 clear and convincing evidence a material, false representation or omission, intent to defraud, reasonable reliance on the representation, and resulting damages. Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970-71 (2d Cir.1987).
Peat Marwick relies chiefly on Antar's own deposition testimony. He agreed to plead guilty to federal felony counts of conspiracy to commit securities fraud and obstruction of justice, and has described in some detail at his deposition his role in the fraud. Peat Marwick says that Antar has admitted that he made material, false statements with an intent to defraud Peat Marwick, and that Peat Marwick's reasonable reliance on those statements caused injury, namely, the cost of litigating the claims brought against it.
Antar has admitted that as a certified public accountant responsible for maintaining Crazy Eddie books and records, he participated in, among other things, the falsification of inventories and the preparation of false debit memos, and that he knew that the financial information filed with the SEC was false and misleading. He falsely represented to Peat Marwick that Crazy Eddie had made available to the auditors all financial records and related data, fairly presented. He also testified about ways in which the Crazy Eddie management tried to shield from the auditors evidence of their fraudulent scheme.
Antar argues first that a Peat Marwick partner, Alphonse Ferrara, knew of Crazy Eddie's fraudulent practices and helped conceal them from the public and the underwriters. Therefore, he argues, Peat Marwick's reliance on statements made by Crazy Eddie management was unreasonable.
Antar also contends that Peat Marwick failed to investigate adequately Crazy Eddie's financial condition and thus did not reasonably rely on Antar's false statements. Antar cites several specific examples of fraud to which he says Peat Marwick should have been alerted if it had properly investigated Crazy Eddie's financial condition.
Peat Marwick has alleged with sufficient particularity the circumstances of the alleged fraud committed against it by Antar. The issues in dispute are whether and to what extent it relied on the representations of Crazy Eddie management, whether it should have engaged in further investigation of the company's financial condition, and whether a Peat Marwick partner participated in the scheme to defraud. These are questions of fact for the jury.

B. Claim for Contribution
To the extent that Peat Marwick is liable to plaintiffs for violating Section 10(b) of the Exchange Act and Rule 10b-5, it may also be entitled to contribution from Antar if he is a "joint tortfeasor" who similarly defrauded plaintiffs. See Sirota v. Solitron Devices, Inc., 673 F.2d 566, 578 (2d Cir.1982), cert. denied, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); McCoy v. Goldberg, 778 F.Supp. 201, 203 (S.D.N.Y. 1991).
Antar says that this court should hold that there is no implied right of contribution under Section 10(b) because Congress made no specific finding of such a right and the court may not manufacture such a right under federal common law.
Antar cites Northwest Airlines, Inc. v. Transport Workers Union, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), holding that there is no implied right of contribution or federal common law right to contribution against union signatories under the Equal Pay Act or Title VII. Antar also points to Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), in which the court held that there was no right of contribution under the Sherman and Clayton Acts.
Whatever those cases may foreshadow as to the Supreme Court's attitude toward contribution under Section 10(b), they were decided before the Sirota case, though it makes no mention of them. The Supreme Court denied certiorari in the Sirota case, and the Second Circuit has not since then disavowed its analysis there.
*815 While some courts have found that there is no implied right of contribution under Section 10(b), see, e.g., Chutich v. Touche Ross & Co., 960 F.2d 721 (8th Cir.1992); Robin v. Doctors Officenters Corp., 730 F.Supp. 122 (N.D.Ill.1989); King v. Gibbs, 876 F.2d 1275 (7th Cir.1989) (no implied right of indemnification under Section 10(b)), Sirota remains the law in this Circuit.
Peat Marwick has a claim for contribution under Section 10(b).
To the extent Peat Marwick is liable to plaintiffs for common law fraud, it also has a right of contribution against Antar under New York law. Section 1404 of the N.Y.Civ.Prac.L. & R. provides in pertinent part that "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought."
Antar says that Peat Marwick has no right to contribution because its claim arises from a breach of contract. Under New York law there is no right of contribution between parties whose potential liability to a third party is for economic loss resulting only from breach of contract. Board of Education v. Sargent, Webster, Crenshaw & Folley, 71 N.Y.2d 21, 523 N.Y.S.2d 475, 517 N.E.2d 1360 (1987).
Although Crazy Eddie and Peat Marwick entered into contracts for the performance of accounting services, Antar had a duty independent of the contracts to refrain from fraudulent misrepresentation. See Meyers v. Waverly Fabrics, 65 N.Y.2d 75, 80 n. 2, 489 N.Y.S.2d 891, 894 n. 2, 479 N.E.2d 236, 238 n. 2 (1985); Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp., 725 F.Supp. 656, 763-64 (N.D.N.Y.1989). Because Peat Marwick has a proper claim in tort it is entitled to contribution from Antar under New York law if the facts so justify. Antar's cross-motion is denied.

III

THE ADVERSARY PROCEEDING
On June 4, 1991 Crazy Eddie, as debtor in possession, commenced an adversary proceeding against Peat Marwick in bankruptcy court in the Southern District of New York. The First Amended Complaint, filed on October 21, 1991, alleges breach of contract and professional negligence as well as a claim for fraudulent conveyance, purportedly under N.Y.Debt. & Cred. §§ 272, 273, 274 and 275. Crazy Eddie claims it is entitled to recover $1,525,227 in fees paid to Peat Marwick, plus interest and attorneys fees, because Crazy Eddie did not receive any benefit from Peat Marwick's professional services.
Peat Marwick moved to dismiss the claim for fraudulent conveyance or to transfer the proceeding to a United States District Court. By order dated December 27, 1991 the Bankruptcy Court transferred the proceeding to this court, where it is entitled Crazy Eddie, Inc. v. Peat Marwick Main & Co., 92 CV 0075, and has been consolidated for pre-trial purposes with In re Crazy Eddie Securities Litigation.
On February 24, 1992 Peat Marwick filed its answer to the Amended Complaint, denying many of Crazy Eddie's allegations and raising numerous affirmative defenses. Peat Marwick also asserted counterclaims for breach of contract, negligence and fraud.
Peat Marwick now moves for an order dismissing the fraudulent conveyance claim for failure to state a claim and failure to plead fraud with particularity and granting it summary judgment on Crazy Eddie's negligence and contract claims as well as Peat Marwick's counterclaims.

A. Crazy Eddie's Fraudulent Conveyance Claim
The theory of Crazy Eddie's fraudulent conveyance claim is that at the time it paid its fees to Peat Marwick, it was insolvent, had unreasonably small capital, and intended to incur debts beyond its ability to pay. In the alternative Crazy Eddie alleges that the payment of fees by the Antar Management *816 was part of its scheme to defraud creditors, and that Peat Marwick knew or should have known these facts. Amended Complaint ¶ 54.
Crazy Eddie thus purports to state a claim under several sections of New York Debtor and Creditor Law. Section 274 provides, so far as pertinent, that "[e]very conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent ... without regard to his actual intent."
Section 275 states in relevant part that "[e]very conveyance made ... without fair consideration when the person making the conveyance ... intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors."
Although Crazy Eddie did not cite Section 276, the allegations purport to state a claim under that statute as well. The pertinent language of that section states that a conveyance made with "actual intent ... to hinder, delay, or defraud either present or future creditors" is fraudulent.
To the extent that the complaint purports to state a claim under Section 276, Crazy Eddie has failed to plead fraud with particularity. The conclusory assertion in ¶ 46 of the complaint that "in the alternative" the payments to Peat Marwick were part of a scheme to defraud other creditors has not been supported by any facts suggesting that Crazy Eddie made those payments for the purpose of defrauding other creditors. Absent specific allegations supporting an "actual intent" to defraud creditors, the claim is insufficient.
Peat Marwick says that the claim is also insufficient with respect to Sections 274 and 275.
Crazy Eddie alleges generally that Peat Marwick performed its services "negligently, carelessly and without the exercise of ... reasonable care and skill," ¶ 37, and "fraudulently overbilled Crazy Eddie for consulting services which were never rendered or which were unnecessary and of no value to Crazy Eddie." ¶ 43.
In particular the claim states that Peat Marwick falsely represented that it had investigated the "Zazy International Transactions," the scheme in which the Antar Management falsely booked millions of dollars in phantom sales to Zazy International in order to falsely inflate Crazy Eddie's retail sales. ¶¶ 44-47.
These allegations do not state a claim for fraudulent conveyance under New York law. Such a claim is limited to exchanges in which the consideration received is "disproportionately small" compared with the value of the property or obligation obtained. N.Y. Debt. & Cred. § 272. There is no fraudulent conveyance because of a failure to meet professional standards in the performance of professional services absent additional allegations of fraud or billing irregularities. In re Investors Funding Corp. Sec. Litig., 523 F.Supp. 533, 549 (S.D.N.Y.1980).
To hold otherwise would convert every professional malpractice claim into a claim for a fraudulent conveyance if the client became insolvent. That would require bankruptcy courts to evaluate the quality of all professional services rendered to the debtor. Id.
Some courts have suggested that a professional malpractice claim can be a fraudulent conveyance under federal bankruptcy law. See, e.g., In re Chicago, Missouri & Western Ry. Co., 124 B.R. 769, 773 (N.D.Ill.1991). But Crazy Eddie has cited no cases that have so held under New York's fraudulent conveyance statutes.
Because the essence of Crazy Eddie's allegation with respect to Zazy International is negligence and not fraud, it is not a proper claim for fraudulent conveyance.
The claim also alleges that Peat Marwick "entered into a scheme with Antar Management to reduce its billings on its audit work in exchange for an agreement to overbill Crazy Eddie on a variety of management and computerization consulting services," providing "no benefit" to Crazy Eddie. ¶ 48. Although Peat Marwick *817 reduced its fees upon protest from Crazy Eddie's Audit Committee, Peat Marwick allegedly "recaptured these reductions ... by fraudulently overbilling Crazy Eddie." ¶¶ 48-51.
If supported by specific facts, these allegations of professional negligence combined with allegations of fraud and billing irregularities would state a claim for fraudulent conveyance. The allegations fail to plead fraud with the requisite particularity to satisfy Federal Rule of Civil Procedure 9(b). Among other things, they do not specify the date of the alleged fraudulent billing scheme, the identity of either the parties who agreed to it or the allegedly fraudulent bills, and the reasons why the services provided were of "no benefit" to Crazy Eddie. See Milgrim, Thomajan & Lee P.C. v. Nycal Corp., 775 F.Supp. 117, 121 (S.D.N.Y.1991) (allegations of fraud must specify time, place, speaker and content of the alleged fraudulent statement).
Crazy Eddie's claim for fraudulent conveyance is dismissed. If it has specific facts to support its allegations consistent with this decision, it may replead the claim.

B. Crazy Eddie's Negligence and Contract Claims
Peat Marwick says that Crazy Eddie's negligence and contract claims against it are barred by the fraudulent conduct of its own officers and directors. Crazy Eddie concedes that they committed fraud. The issue is whether the fraudulent acts are to be imputed to Crazy Eddie to prevent it from recovering from Peat Marwick for injury Crazy Eddie's agents caused. If they are, then Peat Marwick has a defense to both the fraud and professional negligence claims. See Cenco, Inc. v. Siedman & Seidman, 686 F.2d 449, 453 (7th Cir. 1982), cert. denied, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982).
"[W]here a defendant's only sin is its failure to prevent transgressions by the plaintiff, no benefit flows to the public from rewarding the transgressor." Miller v. New York Produce Exchange, 550 F.2d 762, 568 (2d Cir.), cert. denied, 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977). If the fraud committed by Crazy Eddie's top officers was on behalf of the corporation, their knowledge and actions are deemed those of the corporation. The corporation may not escape responsibility for a fraud the primary cost of which was borne not by the stockholders but by outsiders. See Cenco, 686 F.2d at 456.
But when an agent abandons his principal's interests and acts entirely for his or another's purposes, the agent's knowledge and conduct is not imputed to the principal. Center v. Hampton Affiliates, Inc., 66 N.Y.2d 782, 784-85, 497 N.Y.S.2d 898, 899-900, 488 N.E.2d 828, 829-830 (1985). This "adverse interest" exception is not applicable when the agent acts both for himself and for the principal, though his primary interest is inimical to the principal. Id.; In re Investors Funding Corp. Sec. Litig., 523 F.Supp. 533, 541 (S.D.N.Y.1980); In re Wedtech Corp., 81 B.R. 240 (S.D.N.Y.1987).
This principle is applied to a debtor in possession as claimant, because it is subject to all claims and defenses which might have been asserted against the bankrupt before bankruptcy. Miller v. New York Produce Exchange, 550 F.2d 762, 768 (2d Cir.), cert. denied, 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977); In re Wedtech Sec. Litig., 138 B.R. 5, 8-9 (S.D.N.Y.1992).
To defeat Peat Marwick's motion for summary judgment Crazy Eddie must produce evidence from which a jury could find that the perpetrators of the fraud abandoned Crazy Eddie's corporate interest and acted entirely to further their own interests.
Peat Marwick refers the court to the evidence that the Antars and others schemed to inflate the price of Crazy Eddie shares and to mislead investors about the company's financial condition in order to ensure the success of public offerings, the infusion of funds into Crazy Eddie, and the enrichment of the corporation and its shareholders, including of course the Antars themselves.
At trial Peat Marwick may persuade the jury that the Antars acted in part for Crazy *818 Eddie's benefit. But the evidence now before the court is certainly susceptible of the interpretation that any short term benefit to Crazy Eddie was intended to redound to the advantage of only the Antars and their conspirators. In re Investors Funding, 523 F.Supp. at 541.
The fact that some of the embezzled money was put back into the corporation to help inflate sales and facilitate public offerings is not inconsistent with an abandonment by the Antar Management of the corporation's interest.
However unseemly it may be to allow Crazy Eddie to recover from Peat Marwick for damages committed by Crazy Eddie's own officers and directors, the resolution of the issue must await trial. The Miller and Cenco cases, on which Peat Marwick relies for the proposition that the actions of Crazy Eddie's officers and directors should be imputed to the corporation, were appeals after jury verdicts in favor of defendants on the relevant issues. See also In re Wedtech Sec. Litig., 138 B.R. 5, 9 (S.D.N.Y.1992) (denying summary judgment on application of imputation defense). In this case as well, a jury will decide what motivated the Crazy Eddie management to commit the fraud and whether those actions should be imputed to the corporation.

C. Peat Marwick's Counterclaims
In its answer Peat Marwick asserted "counterclaims" for fraud and breach of contract.
The Bankruptcy Court's order of December 30, 1991 confirming Crazy Eddie's First Amended Consolidated Plan of Liquidation prohibited Peat Marwick from asserting a claim against Crazy Eddie for affirmative relief, but allowed claims "as a set-off, recoupment, or defense to any claim asserted against it by the Debtors." In compliance with this order Peat Marwick intends to pursue these "counterclaims" as defenses or set-offs. Under Federal Rule of Civil Procedure 8(c), "[w]hen a party has mistakenly designated a defense as a counterclaim ..., the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."
Though the court will refer to these claims as counterclaims, their label in the answer, it will treat them as defenses or set-offs. Peat Marwick may assert a set-off as an affirmative defense even though it has not filed a proof of claim. Stratton v. Equitable Bank, N.A., 104 B.R. 713, 735 (D.Md.1989), aff'd without opinion, 912 F.2d 464 (4th Cir.1990).
Peat Marwick bases its motion for summary judgment on its counterclaims for fraud and breach of contract on Crazy Eddie's admission of false statements by its officers to Peat Marwick.
Crazy Eddie urges as it did on its own negligence and fraud claims that the actions of Crazy Eddie agents should not be imputed to the corporation. The rule of imputation addresses the unfairness of a corporation suing a third party for injuries caused by the corporation's own agents on its behalf. But the adverse interest exception does not prevent Peat Marwick from making a claim against Crazy Eddie for any fraud perpetrated upon Peat Marwick or any breach of contractual rights it had.
For those purposes, under general principles of agency law, Crazy Eddie is liable for its agents' fraud "though the agent acts solely to benefit himself, if the agent acts with apparent authority." American Soc. of Mechanical Engineers, Inc. v. Hydrolevel Corp., 456 U.S. 556, 566, 102 S.Ct. 1935, 1942, 72 L.Ed.2d 330 (1982). Thus Crazy Eddie is liable on the counterclaims for any fraudulent conduct of its agents.
There remain the issues of fact whether Peat Marwick reasonably relied on the representations of Crazy Eddie management and whether it should have engaged in further investigation of the company's financial condition.
The motion of Peat Marwick for summary judgment is denied.

IV.

SUMMARY
The court decides the pending motions as follows:
i) The Fraud Claims. The court finds that the 1991 amendment to Section 27A of *819 the Securities Exchange Act is constitutional. Defendants' motion for partial summary judgment with respect to the Section 10(b) and Rule 10b-5 claim is denied. Defendants' motion for summary judgment on the common law fraud and negligent misrepresentation claims is granted.
ii) Peat Marwick's Cross-Claim against Sam E. Antar. The motions of Peat Marwick and Antar for summary judgment on Peat Marwick's cross-claims against Antar for fraud or contribution are denied.
iii) The Adversary Proceeding. Crazy Eddie's claim for fraudulent conveyance is dismissed with leave to replead. Peat Marwick's motion for summary judgment on Crazy Eddie's negligence and contract claims is denied. Peat Marwick's motion for summary judgment on its counterclaim against Crazy Eddie is denied.
So ordered.