■ CAPITAL WIRELESS CORPORATION, Appellant, v DELOITTE & TOUCHE, Respondent. [627 NYS2d 794] —Peters, J. Appeal from an order of the Supreme Court (Plumadore, J.), entered February 23, 1994 in Saratoga County, which granted defendant's motion for summary judgment dismissing the amended complaint.

Plaintiff was incorporated in 1988 to design, manufacture, market and distribute television programming by microwave transmission to the greater Capital District area. From its inception, Gregg Oswald was the president and chief executive officer of plaintiff. Oswald was also a majority shareholder and officer of Tri Mark Communications, Ltd., a corporation existing for the purpose of operating wireless cable television systems. Tri Mark was the majority shareholder of plaintiff and had a partnership interest in U.S. Microvision Limited Partnership.

Plaintiff alleges, through its amended complaint, that in approximately June 1992, it became aware that Oswald was fraudulently misstating critical information regarding plaintiff's financial condition to defendant, plaintiff's board of directors, lenders and investors. It alleged that Oswald had abandoned the interests of plaintiff and was acting entirely for his own or another's benefit by engaging in a fraudulent course of conduct that impacted on the financial stability and future profitability of plaintiff. According to plaintiff, Oswald was inflating the number and quality of plaintiff's subscribers and misreporting revenues and accounts receivable so that they would appear consistent with his exaggerated subscriber numbers. Plaintiff alleged that this conduct resulted in extensive overpayments to television programmers and severely limited its cash flow and ability to meet operational expenses. It contended that the purpose of this scheme was to create the appearance of success to lure others into investing money into both Tri Mark and a corporation related to plaintiff, Tennessee Wireless Cable System. Then, through Tri Mark, Oswald sought investors in U.S. Microvision by exaggerating the success of plaintiff. It was further alleged that Oswald made numerous undocumented withdrawals for expense reimbursement and used Tri Mark moneys to support his extravagant lifestyle.

Defendant was engaged to perform auditing services and prepare audited financial reports for plaintiff. In connection therewith, plaintiff's balance sheets and related statements of operations and deficit were provided. Recognizing defendant's representations that such audits were conducted in accordance with generally accepted auditing standards, plaintiff alleged that defendant failed to discover Oswald's misconduct in its preparation of audited financial reports.

On October 1, 1992, plaintiff filed a petition for relief under chapter 11 of the Bankruptcy Act. Plaintiff commenced this action alleging malpractice and breach of express and implied warranties. Defendant moved to dismiss the amended complaint pursuant to CPLR 3211 (a) (1) and (7) or, in the alternative, for summary judgment pursuant to CPLR 3211 (c). Supreme Court granted defendant's motion and dismissed the amended complaint. Plaintiff appeals.

We initially note that neither Supreme Court's decision nor the resultant order specifies the ground upon which it granted defendant's motion. Hence, we begin with the principle that where Supreme Court has not converted a motion made pursuant to CPLR 3211 (a) (7) to one for summary judgment, such

court would not be entitled to consider the merit of any defenses raised (*see, Pietrosanto v NYNEX Corp.,* 195 AD2d 843, 844). The relevant inquiry thus remains whether the pleading states a cause of action for malpractice (*see, Guggenheimer v Ginzburg,* 43 NY2d 268, 275) and, pursuant thereto, plaintiff's affidavits may be used to remedy defects in an inartfully pleaded but meritorious claim (*see, Pietrosanto v NYNEX Corp., supra*). Put to such purpose, we conclude that plaintiff has adequately pleaded a cause of action alleging malpractice (*see generally, Matter of Gouiran Holdings,* 158 Bankr 3, 7-8, *revd* 165 Bankr 104).

While defendant's evidence may not have been relevant on a motion made pursuant to CPLR 3211 (a) (7) (*see, Pietrosanto v NYNEX Corp., supra*), such evidence, consisting largely of correspondence, may be considered on a motion made pursuant to CPLR 3211 (a) (1) (*see, American Indus. Contr. Co. v Travelers Indem. Co.,* 42 NY2d 1041). To be successful, such evidence must resolve all factual issues and definitively dispose of plaintiff's claim (*see, Fern v International Bus. Machs. Corp.,* 204 AD2d 907, 909). Our review of the documentary evidence, most particularly defendant's engagement letters, reveals a failure to definitely dispose of plaintiff's claim. Although such letters placed responsibility for accurate financial statements onto plaintiff and notified plaintiff that irregularities resulting from forgery or collusion may not be detected, it further indicated that an audit is designed "to provide reasonable assurance of detecting errors and irregularities that are material to the financial statements". Accordingly, we find that it was error to dismiss the malpractice claim on this basis.

We do, however, affirm Supreme Court's dismissal of plaintiff's second and third causes of action since New York does not recognize a cause of action based upon breach of warranties arising out of the performance of services and the record does not indicate that the parties contracted for a standard of performance beyond traditional negligence (*see, e.g., Milau Assocs. v North Ave. Dev. Corp.,* 42 NY2d 482, 486; *County of Chenango Indus. Dev. Agency v Lockwood Greene Engrs.,* 114 AD2d 728, 729, *appeal dismissed* 67 NY2d 757).

In the event that the Supreme Court treated defendant's motion as one for summary judgment, we note that it erred in failing to give formal notice of its intention to do so (*see,* CPLR 3211 [c]; *Mihlovan v Grozavu,* 72 NY2d 506, 508; *Metz v Coopers & Lybrand,* 210 AD2d 624, 625-626). We do not, however, find such error fatal since plaintiff appears to have laid bare its proof (*see, O'Dette v Guzzardi,* 204 AD2d 291, 292) by the

submission of extensive affidavits and other evidentiary proof in admissible form (*see, Guzzo v Easterntech Elecs.*, 86 AD2d 717). In so analyzing such evidence in terms of the malpractice claim, we find that defendant has correctly asserted that even assuming a breach of a duty, such claim will not be viable since "knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it" (*Center v Hampton Affiliates*, 66 NY2d 782, 784).

An exception thereto, the "adverse interest" exception, provides that "when an agent is engaged in a scheme to defraud his principal, either for his own benefit or that of a third person, the presumption that knowledge held by the agent was disclosed to the principal fails because he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose" (*supra*, at 784). Yet, to be successful, "the agent must have totally abandoned his principal's interests and be acting entirely for his own or another's purposes" (*supra*, at 784-785). Should the "agent act[ ] both for himself and for the principal, though his primary interest is inimical to the principal" (*Matter of Crazy Eddie Sec. Litig.*, 802 F Supp 804, 817), application of the exception would be precluded.

Defendant primarily contends that the "adverse interest" exception should not apply because Oswald's fraud generated much needed financing for plaintiff and forestalled its bankruptcy. Through the various affidavits, exhibits and excerpts from deposition transcripts, we find that plaintiff has sufficiently shown the semblance of an issue indicating an abandonment of the principal's interest which contemplated the obliteration of plaintiff by forcing it into further deficit and ultimate financial ruin in an effort to raise capital for Tri Mark and U.S. Microvision (*see, e.g., Matter of Investors Funding Corp. of N.Y. Sec. Litig.*, 523 F Supp 533, 540-541). Even focusing "upon the artificial financial picture of [plaintiff] created by [Oswald] which prolonged [plaintiff's] existence several years beyond its actual insolvency * * * [a] corporation is not a biological entity for which it can be presumed that any act which extends its existence is beneficial to it" (*supra*, at 541).

Hence, the issue thus becomes whether mismanagement of plaintiff was the vehicle by which Oswald intended to advance his own interest or whether it was simply incidental to his continued efforts to retain some economic viability in the company. In this preanswer, prediscovery stage of the action,

we find that resolution of this issue is more appropriately left for trial (*see, Matter of Crazy Eddie Sec. Litig.*, 802 F Supp 804, 818, *supra*; *Matter of Wedtech Sec. Litig.*, 138 Bankr 5, 9).

Accordingly, Supreme Court's order is hereby modified by reversing the portion thereof which granted defendant's motion dismissing the malpractice claim and, as so modified, affirmed.

Cardona, P. J., Mercure, White and Spain, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant's motion regarding plaintiff's malpractice cause of action; motion denied regarding said cause of action; and, as so modified, affirmed.