OPINION OF THE COURT
Mark I. Partnow, J.
In this action brought by Ana Perez Moya, individually and on behalf of the infant plaintiff Luis Arnaldo Perez Moya (the infant plaintiff) (collectively plaintiffs), to recover damages for personal injuries sustained by the infant plaintiff due to his ingestion of lead-based paint, defendant City of New York moves for summary judgment dismissing plaintiffs’ complaint as against it. Plaintiffs move for summary judgment in their favor on the issue of liability and for an order setting this case down for a trial on the issue of damages only.
According to plaintiff, in February or March of 1993, she and her son, the infant plaintiff, who was born on April 28, 1992, moved into apartment 1 at 142 Washington Avenue, in Brooklyn, New York. The building is a four-family dwelling owned by the City. The tenant of record for the apartment was Marcelina Muniz, who was the building superintendent. Plaintiff was a longtime personal friend of Muniz, and Muniz did not require plaintiff to pay any rent while she resided with her. Plaintiff alleges that, when she first moved into the apartment, the paint therein was cracked and scaling, and that, two to three days later, she saw the infant plaintiff eating paint chips in the hallway. She claims that after that she saw him eating paint chips many times, and that she had only seen him eat paint chips in that apartment.
On July 20, 1993, plaintiff took the infant plaintiff to Cumberland Diagnostic Center, where he was diagnosed with a blood lead level of 19 micrograms per deciliter, and, on August 4, 1993, the infant plaintiffs blood lead level was 22 micrograms per deciliter. The New York City Department of Health (the DOH) inspected the apartment on August 17, 1993. The lead paint investigation checklist by the DOH Sanitation reported that there was peeling paint in the apartment. On August 27, 1993, the DOH issued an order to abate nuisance to the City, which advised it that numerous lead poisoning violations were found in the apartment and ordered it to abate these violations.
On August 1, 1997 plaintiffs brought this action against the City, as the owner of the subject building, alleging that it was *334 negligent in its maintenance of the apartment, and seeking to recover damages for the infant plaintiffs injuries. The complaint also alleges a claim on behalf of plaintiff for the loss of the infant plaintiffs services.
Plaintiffs predicate their claim against the City on its violation of Local Law No. I,[1] the lead abatement provision of the Administrative Code of the City of New York. In order to establish the liability of a landlord under Local Law 1, which requires the owner of a multiple dwelling to remove or cover paint containing specified hazardous levels of lead in any apartment in which a child six years of age or younger resides, a plaintiff must demonstrate that the landlord had actual or constructive notice of the existence of a hazardous lead paint condition and that a child six years of age or under was living in one of its apartments (see Juarez v Wavecrest Mgt. Team, 88 NY2d 628, 647 [1996]; O’Neal v New York City Hous. Auth., 4 AD3d 348, 349 [2004]).
In any multiple dwelling erected prior to January 1, 1960, where a child or children under seven years of age resides and paint is peeling, it is presumed that the paint in the apartment is lead-based paint (see former Administrative Code § 27-2013 [h] [2]; Administrative Code § 27-2056.5 [a]; Juarez, 88 NY2d at 642). Since Local Law 1 confers upon the landlord the right to enter dwelling units occupied by such children to inspect for and repair a lead paint defect, a landlord will be charged with constructive notice of any lead paint hazard within an apartment that he or she knows is occupied by a child of the specified age (Juarez, 88 NY2d at 647; Jiminez v City of New York, 7 AD3d 268, 269 [2004]; Woolfalk v New York City Hous. Auth., 263 AD2d 355, 355-356 [1999]; Rivas v 1340 Hudson Realty Corp., 234 AD2d 132, 135-136 [1996]).
Here, as noted above, the subject apartment building is a multiple dwelling, and the City does not dispute plaintiffs’ assertion that it was built prior to 1960. The City, in its motion, contends that it had no notice that there was a child living in the apartment under the age of seven prior to the infant *335 plaintiffs diagnosis of an elevated blood lead level on July 20, 1993. In support of this contention, the City relies upon a form issued by it, dated January 1993, which it required the tenant of record to complete and return. The form explained the dangers of lead paint, and the bottom part of it inquired, “[D]o you have peeling paint?” and “[D]o you have children under 7 years of age who live in your apartment?” Muniz, as the tenant of record, signed her name on the bottom part of the form, dated it June 21, 1993, and checked “no” to both questions. The City argues that, since the tenant of record affirmatively made these representations, it cannot be charged with notice of a child under seven living in the apartment or of peeling paint, and, thus, it cannot be held liable for the lead paint hazard.
In opposition, plaintiffs point out that, as noted above, Muniz was not merely the tenant of record, but the superintendent of the building. Although Muniz was directly employed by defendant Security and Bonded Maintenance Corp., which paid her salary, the contract between the City and Security, and the deposition testimony of Robert Nall, the City’s property manager, establishes that the City directed, controlled, and supervised Muniz’s work, and was her special employer (see Thompson v Grumman Aerospace Corp., 78 NY2d 553, 558 [1991]; Brunetti v City of New York, 286 AD2d 253, 254 [2001]; Bono v City of New York, 2 Misc 3d 59, 60 [2003]).
The City, in response, does not deny that it was Muniz’s special employer or that she was its agent. It is well settled that “knowledge acquired by an agent acting within the scope of his [or her] agency is imputed to his [or her] principal and the latter is bound by such knowledge although the information is never actually communicated to it” (Center v Hampton Affiliates, 66 NY2d 782, 784 [1985]; see also Capital Wireless Corp. v Deloitte & Touche, 216 AD2d 663, 664 [1995]).
The City relies upon an exception to this rule which occurs when the agent has totally abandoned his or her principal’s interests and is acting entirely for his or her own or another’s purposes (see N.X. v Cabrini Med. Ctr., 97 NY2d 247, 252 [2002]; Judith M. v Sisters of Charity Hosp., 93 NY2d 932, 933 [1999]; Prudential-Bache Sec. v Citibank, 73 NY2d 263, 276 [1989]; Center, 66 NY2d at 784-785; Christopher S. v Douglaston Club, 275 AD2d 768, 770 [2000]; Capital Wireless Corp., 216 AD2d at 666). The City asserts that Muniz’s conduct, in permitting plaintiff, who was a personal friend of hers for 20 years, and the infant plaintiff to live in her apartment rent-free, served wholly *336 personal motives unrelated to Muniz’s position as the superintendent of the building. It states that, since it collected no rent from plaintiff and no lease was issued to her, such conduct by Muniz was not in the scope of her employment or in furtherance of its business interests. The City thus argues that Muniz’s knowledge of the presence of the infant plaintiff in the apartment cannot be imputed to it.
The City’s argument must be rejected. The exception relied upon by the City “cannot be invoked merely because [its agent] has a conflict of interest or because he [or she] is not acting primarily for his [or her] principal” (Center, 66 NY2d at 785; see also Capital Wireless Corp., 216 AD2d at 666). That is, “[s]hould the ‘agent act[ ] both for himself [or herself] and for the principal, though his [or her] primary interest is inimical to the principal’ . . . application of the exception would be precluded” (Capital Wireless Corp., 216 AD2d at 666, quoting Matter of Crazy Eddie Sec. Litig., 802 F Supp 804, 817 [1992]).
Here, it cannot be said that Muniz totally abandoned the City’s interests or any obligations that she owed to it in permitting plaintiffs to live with her. There was no scheme to defraud the City nor was Muniz’s personal interest completely adverse to or conflicting with the City’s interests. Moreover, while the City alleges that Muniz’s conduct was not within the scope of her employment, the negligence for which plaintiffs seek to hold the City liable is not based upon its vicarious liability for an act committed by Muniz to further a solely personal interest of hers (compare N.X., 97 NY2d at 252; Judith M., 93 NY2d at 933).
Furthermore, the purported misrepresentation[2] by Muniz on the June 21, 1993 form, filled out by Muniz in her capacity as a tenant of record of the building, does not establish sufficient adversity by Muniz with regard to her duties as superintendent to negate imputed knowledge to the City of the knowledge acquired by her of the presence of a child under age seven in the apart *337 ment (see Center, 66 NY2d at 785; Capital Wireless Corp., 216 AD2d at 666). Moreover, there is no evidence that Muniz committed any fraudulent act or was engaged in any scheme to defraud the City in permitting plaintiffs to live with her (compare Center, 66 NY2d at 784; Capital Wireless Corp., 216 AD2d at 666).
In any event, regardless of what Muniz stated on the June 21, 1993 form, the fact remains that Muniz had actual knowledge of the presence of a child under the age of seven in the apartment. Where the City has otherwise acquired actual notice of a child under age seven in an apartment, the fact that a tenant did not indicate the presence of such child on a form on which to identify a minor inhabitant cannot preclude the presumption of lead-based paint (see Administrative Code § 27-2056.4 [d] [2]; [e] [3] [ii]; § 27-2056.5). Therefore, notice to Muniz, who was the superintendent and, thus, the agent of the landlord, concerning the infant plaintiffs residence in the subject apartment, is imputable to the City (see Primrose Mgt. Co. v Donahoe, 253 AD2d 404, 405-406 [1998]; Pantekas v Westyard Corp., 44 AD2d 789, 789 [1974]).
Additionally, the fact that plaintiff was not the tenant of record and did not pay the City rent does not preclude plaintiffs’ recovery herein. Indeed, in Juarez (88 NY2d at 638), the plaintiff was not the tenant of record. Rather, the plaintiff had sublet the apartment, where the infant plaintiff was lead poisoned, from the tenant of record, in violation of the tenant’s lease, which expressly prohibited him from subletting all or part of the apartment (id.). The plaintiff had also admitted in her deposition testimony that she never informed the defendant landlord of her prohibited agreement with the tenant of record (id. at 648). Nevertheless, since it was disputed as to whether the building superintendent saw her family move into the building, the Court of Appeals held that a triable issue of fact existed as to whether the defendant landlord had notice that the apartment was occupied by a child under the age of seven (id.).
The City also argues that, since Muniz indicated on the June 21, 1993 form that there was no peeling paint in the apartment, it had no actual notice of peeling paint in the apartment prior to the infant plaintiffs diagnosis of an elevated blood lead level on July 20, 1993. However, pursuant to Juarez (88 NY2d at 647), “whether the landlord had actual notice of peeling paint . . . [is] immaterial” (Woolfalk, 263 AD2d at 356). Rather, under the statutory scheme, a landlord who has notice that a child *338 under age seven is living in the apartment is chargeable with constructive notice of the hazardous lead condition in the apartment (Juarez, 88 NY2d at 647; Woolfalk, 263 AD2d at 355-356; Rivas, 234 AD2d at 135-136).
The City’s reliance upon Chapman v Silber (97 NY2d 9, 19-20 [2001]) and Busto v Tamucci (251 AD2d 441, 442 [1998]) is misplaced since these cases were outside of the City of New York, where there is no controlling legislation and, thus, the statutory presumption does not apply. Similarly, such statutory presumption was also inapplicable in Andrade v Wong (251 AD2d 609, 609-610 [1998]), which is relied upon by the City, since the building therein was not a multiple dwelling. Consequently, the City’s motion for summary judgment dismissing plaintiffs’ complaint as against it must be denied.
With respect to plaintiffs’ motion for summary judgment, plaintiffs have, as set forth above, established that the City had actual or constructive notice of both the hazardous lead condition and the residency of a child six years of age or younger. In addition, plaintiffs have submitted evidence of a complaint to the City, made by Muniz in May 25,. 1993, about a hole in a painted wall. They have also submitted forms filled out in March 1991 and December 22, 1992 with regard to Muniz’s painting of the apartment and evidence that Muniz never picked up the items to paint it, and that an inspection was never performed by the City to ensure that the apartment was painted. Furthermore, plaintiff’s deposition testimony regarding the peeling paint condition in the apartment at the time she moved in is uncontroverted, and the City has not shown any reasonable or diligent efforts undertaken by it to remedy the hazardous lead condition prior to the infant plaintiff’s lead poisoning so as to raise a triable issue of fact herein (see Juarez, 88 NY2d at 645).
Plaintiffs’ proof as to causation establishes that the apartment contained hazardous levels of lead-based paint, that the infant plaintiff was observed ingesting paint chips, that he had elevated blood lead levels, and that he did not manifest certain behavioral changes prior to moving into the apartment (see Juarez, 88 NY2d at 648). The City, in response, has not rebutted the plaintiffs’ prima facie showing of causation. Thus, plaintiffs are entitled to summary judgment on the issue of liability (see CPLR 3212 [b]).
*339 Accordingly, the City’s motion for summary judgment dismissing plaintiffs’ complaint as against it is denied. Plaintiffs’ motion for summary judgment in their favor on the issue of liability is granted. The assessment of damages shall be scheduled and held at a future date.

. The provisions relating to lead paint hazards in Administrative Code of the City of New York § 27-2013 (h) (Local Law No. 1 [1982] of City of NY) were repealed (Local Law No. 38 [1999] of City of NY § 5; Local Law No. 38 [1997] of City of NY) and replaced with the provisions contained at Administrative Code § 27-2056.1 et seq. (Local Law No. 1 [2004] of City of NY). The new legislation maintained the same presumption of the existence of lead-based paint discussed below.

. It is noted, in this regard, that despite plaintiff’s sworn deposition testimony that she moved into the apartment in February or March of 1993, when the infant plaintiff was just under a year old, the City argues that plaintiffs could not have moved into the apartment before July 1993, or prior to June 21, 1993, the date the form was signed by Muniz. The City bases this argument merely upon plaintiffs deposition testimony that she first saw the infant plaintiff eat paint chips two to three days after she moved into the apartment, and that, at her General Municipal Law § 50-h hearing, plaintiff had testified that she took the infant plaintiff to the doctor on July 20, 1993, two weeks after she saw him eat paint chips. However, as noted above, plaintiff testified at her deposition that she had seen the infant plaintiff eat paint chips at the apartment on more than one occasion.