■ JAMES C. COLLINS, as Trustee in Bankruptcy of EDWARD NEZELEK CONSTRUCTION COMPANY, INC., Respondent, v ESSERMAN & PELTER et al., Appellants. [681 NYS2d 399] —Crew III, J. P. Appeal from a judgment of the Supreme Court (Monserrate, J.), entered January 8, 1998 in Broome County, upon a decision of the court in favor of plaintiff.

In 1983, Robert Kocenko and Anthony Passionino formed Edward Nezelek Construction Company, Inc. (hereinafter Nezelek), a general contracting company. Thereafter, in 1984, Nezelek retained defendant Esserman & Pelter (hereinafter E & P) to prepare compilations and, later, beginning in 1986, to prepare financial statements. Also in 1986, Nezelek terminated its bookkeeper, Mary Anne Walsh, after discovering that she was stealing money from the company and hired Reta Jordan. Jordan previously had worked for E & P for a number of years but was fired due to poor job performance. Following her departure from E & P, Jordan went to work for one of its clients but allegedly was terminated from that position for embezzling funds.

Upon discovering that Nezelek had hired Jordan, defendants William R. Starring and Edward Esserman met with Kocenko and Passionino to discuss Jordan's background. Although there appears to be some dispute as to the precise information

disclosed by Starring to Kocenko and Passionino,[1] the record reveals that no one at Nezelek appeared to be particularly concerned with Jordan's past "troubles". Following Walsh's termination, Nezelek had instituted certain "internal controls" to prevent future incidents of fraud, including instituting a policy that checks could be signed only by Kocenko, Passionino or Lance Couch (also an officer of the corporation at one point) and then only when such checks were accompanied by appropriate invoices. Thus, Kocenko and Passionino apparently reasoned, absent access to large sums of cash and the authority to sign checks, the potential for their bookkeeper to defraud them was greatly diminished.

Nezelek's internal controls proved to be inadequate, however, and in 1987 or 1988 Jordan began stealing money by setting up bogus accounts in names similar to those of certain of Nezelek's subcontractors. Jordan would then present checks made payable to these fictitious entities to Kocenko, Passionino or Couch for signing, whereupon she would deposit the checks into the aforementioned accounts for her personal use.

In April 1990, Nezelek received notice that the Internal Revenue Service had levied certain accounts receivable for failing to pay various payroll taxes. Shortly thereafter, in July 1990, E & P began conducting reviews for fiscal years ending February 28, 1990 and September 30, 1990.[2] While preparing the review for fiscal year ending February 28, 1990, Starring discovered that approximately $280,000 in tax liabilities had not been paid and that Jordan had falsified records to conceal this fact. When confronted, Jordan offered a variety of explanations but eventually admitted that she had failed to mail the checks for the tax payments. E & P then made certain adjustments to Nezelek's records to reflect the tax liability. Starring encountered similar problems with respect to preparing the review for fiscal year ending September 30, 1990, prompting Nezelek to employ a payroll service to perform such functions.

Jordan remained employed by Nezelek until late 1991 or early 1992 when she was terminated due to poor job performance. Nezelek thereafter hired Rebecca Goss who, upon

---

1. Starring testified at trial that he informed Kocenko and Passionino that Jordan had embezzled money from her previous employer, while both Kocenko and Passionino testified that Starring merely made reference to Jordan having had some "troubles" in the past. As to the nature of such troubles, Kocenko and Passionino testified that they did not explore this topic and that no further explanation from Starring was offered.

2. Nezelek changed the end of its fiscal year from February to September, thereby necessitating two financial reviews during this period.

examining the books, discovered Jordan's scheme. Jordan subsequently was prosecuted and ordered to make restitution in the amount of $289,023.79.

In March 1992, Nezelek filed a petition for bankruptcy and plaintiff was appointed as the trustee in bankruptcy. Plaintiff thereafter commenced this malpractice action against E & P and its partners based upon their failure to uncover Jordan's fraudulent scheme. Following a nonjury trial, at which both parties presented the testimony of expert witnesses, Supreme Court found in favor of plaintiff and awarded damages in the amount of $211,000, representing the sum stolen by Jordan between October 1990 and November 1991, together with interest from May 1, 1991 and costs. This appeal by defendants ensued.

Initially, we reject defendants' assertion that the record as a whole fails to demonstrate that defendants deviated from the applicable standard of care by failing to exercise such skill and care in the performance of the work as a reasonably skillful and diligent certified public accountant would employ under the same circumstances (see, 1A, NY PJI 2:154 [3d ed]). Even assuming, as defendants argue, that Supreme Court indeed failed to, *inter alia*, appreciate the distinction between a review and an audit and misapplied the concept of "professional skepticism" and relevant industry standards, our independent review of the record nonetheless persuades us that Supreme Court's finding of malpractice is supported by the evidence.

Upon reviewing the "Statements on Standards for Accounting and Review Services" promulgated by the American Institute of Certified Public Accountants, it is apparent, as defendants contend, that a review and an audit are two entirely different creatures, with the former being designed to provide only a limited assurance that there are no material modifications that should be made to the financial statements in order for them to be in conformity with generally accepted accounting principles. Even with respect to a review, however, the accountant is obligated to exercise due care in the performance of the engagement (see, *Hall & Co. v Steiner & Mondore*, 147 AD2d 225, 228). To that end, the applicable standards provide that: "if the accountant becomes aware that information coming to his attention is incorrect, incomplete or otherwise unsatisfactory, he should perform the additional procedures he deems necessary to achieve a limited assurance that there are no material modifications that should be made to the financial statements in order for the statements to be in conformity with generally accepted accounting principles" (American Institute

of Certified Public Accountants, Statements on Standards for Accounting and Review Services § 100.29).

In this regard, Starring testified that he knew of Jordan's prior history of embezzlement and, with respect to her employment at Nezelek, was aware that she had failed to make the required tax payments, falsified records to conceal that fact and repeatedly lied to him and Nezelek's management about such tax payments. Confronted with such information, it cannot seriously be argued that Starring was not under an obligation, in accordance with the quoted industry standard (not to mention the applicable case law), to perform such additional procedures as were necessary to effectively discharge the duty owed by defendants to their client. As to those additional procedures, although the certified public accountant testifying on behalf of defendants stated that both the February 1990 and September 1990 reviews were conducted in compliance with industry standards and that appropriate analytical procedures were utilized, plaintiff's expert, also a certified public accountant, provided testimony to the contrary, and this conflicting evidence merely provided a credibility issue for Supreme Court to resolve (*see, e.g., Thompson v State of New York*, 248 AD2d 798).

Equally unpersuasive is defendants' contention that the sole proximate cause of the loss incurred here was the failure of Nezelek's management to adhere to their own internal controls and policies regarding check-signing procedures. As to defendants' assertion that Supreme Court erred in failing to apply principles of comparative fault to limit defendants' liability, again we disagree. To be sure, the record is replete with evidence that Nezelek's management "aided" Jordan in her fraudulent scheme by repeatedly signing checks without appropriate invoices or documentation, failing to detect the inconsistencies between the listed payees and accompanying addresses on such checks, and refusing to fire Jordan even after learning that she had neglected to make the required tax payments, falsified corporate records and lied. The record fails to demonstrate, however, that such "negligence" contributed to defendants' failure to perform their duty; in other words, the record as a whole does not substantiate defendants' claim that the conduct of Nezelek's management substantially impeded defendants' ability to complete the review that they had been hired to perform (*see, Hall & Co. v Steiner & Mondore*, 147 AD2d 225, *supra*; *National Sur. Co. v Lybrand*, 256 App Div 226).

Finally, with respect to the interest awarded by Supreme

Court, it is well settled that where, as here, the underlying damages were incurred at various points in time, CPLR 5001 (b) permits interest to be computed "upon each item from the date that it was incurred or upon all of the damages from a single reasonable intermediate date". As the dates upon which the damages were incurred here may be readily ascertained from the face of the underlying checks, we believe that the more appropriate course would be to compute interest from the date of each relevant check instead of the May 1, 1991 date selected by Supreme Court. Defendants' remaining contentions have been examined and found to be lacking in merit.

White, Peters, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as computed interest on the damages awarded from May 1, 1991; said interest on the damages awarded is to be computed from the date of each of the underlying checks in accordance with this Court's decision; and, as so modified, affirmed.