■ Cumis Insurance Society, Inc., as Assignee and Subrogee of Oneida Ltd. Employees Federal Credit Union, Appellant, v Patricia W. Tooke et al., Defendants, and Sciarabba, Walker & Company, LLP, Respondent. [739 NYS2d 489] —Spain, J. Appeal from an order of the Supreme Court (Relihan, Jr., J.), entered April 11, 2001 in Tompkins County, which granted a motion by defendant Sciarabba, Walker & Company, LLP for summary judgment dismissing the complaint against it.

Between 1990 and 1997, defendant Patricia W. Tooke embezzled approximately $450,000 in cash from the main branch of Oneida Ltd. Employees Federal Credit Union (hereinafter Oneida)* where she was the head teller. Plaintiff, Oneida's fidelity insurer, reimbursed Oneida in full for this loss and commenced this action against Tooke, defendant Price Waterhouse Coopers Investment Advisors, LLC (formerly Coopers & Lybrand), the accounting firm whose retainer with Oneida expired on December 31, 1993, and defendant Sciarabba, Walker & Company, LLP (hereinafter defendant), which audited Oneida's year-end financial statements from 1994 through 1997. Plaintiff alleged that the accounting firms had breached their obligations under the engagement letters with Oneida in which they agreed to perform year-end audits of Oneida's financial statements in accordance with generally accepted auditing standards (hereinafter GAAS) and generally accepted accounting principles (hereinafter GAAP). Plaintiff also alleged that their conduct constituted professional negligence.

The accountants' certified audits for the years in issue represented that they had been conducted in accordance with GAAS and opined that Oneida's financial statements fairly presented the financial position of Oneida in all material respects. Plaintiff contends that these certified opinions were materially incorrect in that they failed to reflect Tooke's misappropriations and the cash shortage. Plaintiff specified that in breach of their agreements and professional duty, the accountants failed, inter alia, to establish a system of internal controls for Oneida's vault cash, failed to evaluate the existing internal controls and procedures and report material weak-

---

* Oneida is now known as Access Federal Credit Union.

nesses or deficiencies, failed to count the vault cash or reconcile those counts to the general ledger vault account and failed to reconcile the general ledger to the statements of Oneida's account with Empire Corporate Bank, the bank from which Oneida received its cash. As a consequence of these failings, plaintiff alleged that the accountants neglected to detect Tooke's embezzlement scheme which involved delaying the posting of Oneida's receipt of cash from Empire.

Following joinder of issue, defendant moved for summary judgment contending that under the terms of the engagement letters, Oneida—and not defendant—was responsible for counting vault cash and properly posting transactions, including cash deliveries. Defendant also argued that its accounting practices were not the proximate cause of the losses sustained by Oneida, citing the lack of evidence regarding exactly when the individual thefts occurred and their amounts. In opposition, plaintiff submitted the affidavits of Herbert Benton, a certified public accountant who holds an MBA and who is also an accounting professor and an attorney admitted in New York. Benton conducted his own investigation and reviewed, inter alia, Oneida's books, records and procedures as well as defendant's working papers, the engagement letters and Tooke's deposition testimony. Benton opined that both accounting firms had agreed to render nonqualified opinions, also referred to as certified audits (*see, Iselin & Co. v Landau*, 71 NY2d 420, 424-425 [noting that certified audits require the auditor's certification that it was performed under GAAS and that financial statements were prepared according to GAAP]; *cf., Italia Imports v Weisberg & Lesk*, 220 AD2d 226), and both were negligent and failed to perform their audits according to GAAS in several respects. Benton concluded that, had the firms properly performed their auditing functions according to GAAS, they would have discovered the delays in posting the cash deliveries and Tooke's ongoing embezzlement.

Supreme Court granted defendant's motion and dismissed the complaint against it, reasoning that defendant's contractual undertakings did not include counting vault cash or verifying the accuracy or timeliness of the recordation of transactions, which would have exposed Tooke's scheme. On plaintiff's appeal challenging the award of summary judgment to defendant, we reverse, finding that defendant failed to establish its entitlement to judgment as a matter of law.

To address defendant's liability for failing to detect Tooke's embezzlement scheme, an understanding of how the scheme operated is necessary. As head teller during the operative time,

it was Tooke's responsibility to order cash from Empire in varying amounts at her discretion to replenish the bank's vault cash, to count the bundles of cash when they were delivered to Oneida, to place the cash in the vault and to record the receipt of cash in the general ledger. As an elementary principle, at all times the amount of cash in the vault should match the total cash recorded in the general ledger. Tooke testified that beginning in 1990, she began a cumulative scheme in which she stole cash from a cash delivery sent by Empire, held the dated receipt for the cash delivery on her desk and simply delayed posting the amount of the cash delivery in the bank's general ledger until the arrival of the next cash delivery she ordered from Empire. At that point, Tooke would belatedly post the older cash delivery in the general ledger, attach the Empire receipt for that older delivery, and place the newly delivered cash (or part of it) in the vault, but withhold the dated receipt for the newer cash delivery. By repeating this cumulative scheme once or twice a month between 1990 and late 1996, Tooke's misappropriation eventually totaled approximately $450,000. Under this scheme, the posting of cash deliveries on the general ledger was done days and often a week or more after the actual delivery date, which delayed posting was discernible from the attached dated delivery receipt as well as from Oneida's monthly account statement with Empire. Tooke had no records or recall of the exact amounts taken on specific dates, but testified that the largest amount taken was $10,000 and that approximately half of the money had been taken by January 1, 1994, the first year that defendant entered into an engagement letter with Oneida.

To prevail on its motion for summary judgment, defendant, as the movant, had the initial burden to tender evidentiary prima facie proof in admissible form sufficient to justify judgment as a matter of law in its favor that it did not breach the contract or perform its services in a professionally negligent manner (see, CPLR 3212 [b]; Zuckerman v City of New York, 49 NY2d 557, 562; Estate of Nevelson v Carro, Spanbock, Kaster & Cuiffo, 259 AD2d 282, 284; Metz v Coopers & Lybrand, 210 AD2d 624, 628). In support of its motion, defendant, relying on the deposition testimony of Tooke, Oneida's controller and its assistant head teller and the terms of the engagement letters and other documentary evidence, argued that the types of accounting and auditing services and investigation that would have detected Tooke's defalcations—such as auditing the recording of cash deliveries and transactions—were excluded from the services contracted for and remained Oneida's responsibility. Defendant offered no expert testimony regard-

ing GAAP, GAAS or the scope of the auditing and accounting services it undertook.

Pursuant to the letters of engagement on which defendant relies, defendant agreed to perform year-end audits of Oneida's financial statements for 1994, 1995 and 1996. Defendant expressly agreed to "report on the fairness of the presentation of the financial statements *in accordance with generally accepted accounting principles*" (emphasis supplied), and to "conduct [the] audit *in accordance with generally accepted auditing standards*" (emphasis supplied), which "require that [defendant] plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement" and "includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements." The letters provided that "the audit is designed to provide reasonable assurance of detecting errors and irregularities that are material to the financial statements" (*see, Capital Wireless Corp. v Deloitte & Touche*, 216 AD2d 663, 665), and defendant agreed to inform Oneida if such errors came to its attention. Defendant relies heavily on the notification in the letters that "[t]he proper recording of transactions, safeguarding of assets, and the financial statements are the responsibility of [Oneida's] management" and that the audit "cannot be relied upon to disclose all fraud, defalcations, or other irregularities."

In our view, neither the testimony nor the letters of engagement or any other documentary evidence supports the award of summary judgment to defendant. The extent of the services and investigation that defendant was required to conduct in its audit of Oneida's financial statements to render an opinion as to the fairness of the presentation and to discover irregularities, errors and defalcations is governed by the express terms of the contractual agreement as well as defendant's independent duty to exercise a reasonable degree of care and competence in the performance of these professional services (*see, Collins v Esserman & Pelter*, 256 AD2d 754; *Unadilla Silo Co. v Ernst & Young*, 234 AD2d 754, 754; *Capital Wireless Corp. v Deloitte & Touche, supra* at 664, 665; *Hall & Co. v Steiner & Mondore*, 147 AD2d 225, 228; *see also, Iselin & Co. v Landau, supra* at 424-425). Accounting malpractice or professional negligence contemplates a failure to exercise due care and proof of a material deviation from the recognized and accepted professional standards for accountants and auditors, generally measured by GAAP and GAAS promulgated by the American Institute of Certified Public Accountants, which proximately

causes damage to plaintiff (*see*, *Ackerman v Price Waterhouse*, 84 NY2d 535, 541; *Collins v Esserman & Pelter*, *supra* at 754, 756; *Estate of Burke v Repetti & Co.*, 255 AD2d 483; *Post & Co. v Bitterman*, 219 AD2d 214, 223; *Metz v Coopers & Lybrand*, *supra* at 624; *see also*, 1A NY PJI3d 2:154, at 691 [1998]).

While, with limitations, an accountant and client may contractually agree that the accountant is not to perform certain services, thereby absolving the accountant of liability for not performing them (*see*, *Italia Imports v Weisberg & Lesk*, 220 AD2d 226, 226-227, *supra*), the letters here did not do so in any respect which would entitle defendant to summary judgment dismissing plaintiff's complaint. Notwithstanding the fact that the letters place responsibility on Oneida for "[t]he proper recording of transactions, safeguarding of assets, and the financial statements," and warn that irregularities and defalcations may not be detected, the letters indicate that the audit is designed to "provide reasonable assurance of detecting errors and irregularities that are material to the financial statements" (*see*, *Capital Wireless Corp. v Deloitte & Touche*, 216 AD2d 663, 665, *supra*). Notably, the letters expressly bound defendant to review Oneida's financial statements in accordance with GAAP and to conduct its audit in accordance with GAAS and, indeed, defendant's independent audit reports expressly claim that the audits were conducted in accordance with GAAS.

However, in moving for summary judgment, defendant failed to submit any expert or qualified testimony or proof to establish the nature or extent of accounting and auditing services that it contractually undertook to provide, the governing standard of care for these auditing and accounting services, or its compliance with the applicable standard of care or adherence to GAAP and GAAS as required to establish its entitlement to judgment in its favor as a matter of law (*see*, *Estate of Nevelson v Carro, Spanbock, Kaster & Cuiffo*, 259 AD2d 282, 284, *supra*; *cf.*, *Collins v Esserman & Pelter*, 256 AD2d 754, 757, *supra*; *Estate of Burke v Repetti & Co.*, 255 AD2d 483, *supra*; *Metz v Coopers & Lybrand*, 210 AD2d 624, 627-628, *supra*). In this regard, we do not agree with Supreme Court's conclusion that the proof presented solely a question of law regarding the effect to be given to the clear terms of the parties' contracts, and the scope of defendant's professional duties. Thus, defendant failed to demonstrate its fulfillment of its contractual or professional obligations to Oneida and should not have been awarded summary judgment dismissing plaintiff's complaint against it.

Moreover, while plaintiff's obligation to come forward with

expert evidence on the duty of care in opposition was not triggered as defendant's motion was not properly supported, plaintiff in fact submitted the extensive Benton affidavits which supported its position that defendant departed from the requisite standard of care in performing the audits, creating a question of fact on that issue (*see, Estate of Nevelson v Carro, Spanbock, Kaster & Cuiffo, supra* at 283-284; *Metz v Coopers & Lybrand, supra* at 627-628; *cf., Estate of Burke v Repetti & Co., supra* at 483; *see also, Georgetown Mews Owners' Corp. v Campus Assoc.*, 289 AD2d 376). While Supreme Court faulted Benton's unrefuted affidavits for, among other things, failing to rely on specific provisions of GAAS, and apparently disagreed with his opinions regarding the scope of defendant's duties in performing these certified audits, we find that Benton's affidavits were sufficient to create a question of fact as to defendant's breach of its contractual and professional obligations to Oneida.

Mercure, J.P., Peters, Carpinello and Mugglin, JJ., concur. Ordered that the order is reversed, without costs, and motion denied.