[6 NYS2d 427]

CHARLES J. HECHT, Derivatively on Behalf of ANDOVER ASSOCI-
ATES LLC I, Plaintiff, v ANDOVER ASSOCIATES MANAGEMENT
CORP. et al., Defendants, and ANDOVER ASSOCIATES LLC I,
Nominal Defendant.

Supreme Court, Nassau County, January 15, 2015

## APPEARANCES OF COUNSEL

*Vedder Price*, New York City, for Citrin Cooperman & Co., LLP, defendant.

*Wolf Haldenstein Adler Freeman & Herz LLP*, New York City, and *Jaspan Schlesinger LLP*, Garden City, for plaintiff.

## OPINION OF THE COURT

STEPHEN A. BUCARIA, J.

Motion by defendant Citrin Cooperman & Co., LLP for summary judgment dismissing the complaint is *denied*.

This is a derivative action on behalf of an investment fund, Andover Associates LLC I, which arises from the collapse of Bernard L. Madoff Investment Securities. Madoff Securities purported to pursue an investment strategy on behalf of funds such as Andover whereby it would purchase a basket of stocks on the S&P 100 Index and hedge those purchases with related options contracts. In reality, Madoff conducted no actual securities or options trading on behalf of its customers. Instead, Madoff deposited customer investments into a single commingled checking account and, for years, fabricated customer statements to show fictitious securities trading activity and annual returns ranging between 10 and 17% (*see In re Bernard L. Madoff Inv. Sec. LLC*, 773 F3d 411 [2d Cir 2014]). Madoff's fraudulent activity became publically known on December 11, 2008.

Plaintiff, an investor in Andover, alleges that its managing members invested in Madoff's fund without conducting an adequate investigation into his operation. Plaintiff's claims against Andover's managing members and its investment consultant, defendant Ivy Asset Management Corp., have been settled. Plaintiff's only outstanding claim is against Andover's auditor, defendant Citrin Cooperman & Co., for accounting malpractice.

Pursuant to an engagement letter dated January 16, 2006, Citrin Cooperman agreed to perform certain accounting services for Andover for the year ended December 31, 2005. Citrin Cooperman agreed to audit the balance sheet of Andover and the related statements of operations, changes in partners' capital, and cash flows for the year then ended. The audit was

to include "tests of documentary evidence supporting the transactions recorded in the accounts, tests of the physical existence of inventories, and direct confirmation of receivables and certain other assets . . . by correspondence with selected customers, creditors, and financial institutions." Citrin Cooperman's audit was not "designed to provide assurance on internal control or to identify reportable conditions, that is, significant deficiencies in the design or operation of internal control." However, if Citrin Cooperman became aware of such reportable conditions during its audit, they promised to report them to Andover (defendant's exhibit C).

Plaintiff alleges that Citrin Cooperman committed malpractice in the performance of its audit of Andover for the years 2005, 2006, and 2007. Plaintiff alleges that Citrin Cooperman had a responsibility to confirm the existence, custody, and value of portfolio securities held by Madoff at year end and selected interim dates (first amended derivative complaint ¶ 344). Plaintiff further alleges that Citrin Cooperman had a duty to test an appropriate sample of Madoff's portfolio transactions for proper authorization, extensions, trade dates and reasonableness of transaction pricing. Plaintiff alleges that Citrin Cooperman committed malpractice by failing to confirm the existence of the securities purportedly held by Madoff and failing to test an appropriate sample of transactions purportedly conducted on Andover's behalf. Plaintiff alleges that Citrin Cooperman's negligence caused Andover to suffer the loss of its investment.

Defendant Citrin Cooperman is moving for summary judgment dismissing the complaint. Defendant argues that it was not negligent in that it had no obligation to audit Madoff. Defendant argues Andover had no damages and that plaintiff cannot establish that its loss was proximately caused by defendant's audit.

Accounting malpractice contemplates a failure to exercise due care and proof of a material deviation from the recognized and accepted professional standards for accountants and auditors, generally measured by generally accepted accounting principles and auditing standards promulgated by the American Institute of Certified Public Accountants, which proximately causes damage to plaintiff (*Cumis Ins. Socy. v Tooke*, 293 AD2d 794, 797-798 [3d Dept 2002]).

AU section 330 of the American Institute of Certified Public Accountants's Professional Standards deals with the confirma-

tion process (defendant's exhibit Y). In general "confirmation" is the process of obtaining and evaluating a direct communication from a third party in response to a request for information about a particular item affecting financial statement assertions (AU 330.04). The auditor is responsible for selecting the items for which confirmations are to be requested and designing the confirmation request (id.). Confirmation is undertaken to obtain evidence from third parties about financial statement assertions made by management (AU 330.06). It is presumed that audit evidence is more reliable when it is obtained from knowledgeable independent sources outside the entity being audited (id.).

It may be presumed that Madoff would not have responded truthfully, had defendant inquired of Madoff to confirm the existence of specific securities transactions. However, the obligation to design the confirmation may have required defendant to request sufficient documentation to substantiate the transaction. Had defendant requested documentation on a large enough sample of transactions, it may have been more difficult for Madoff to cover up its fraud. Moreover, a reasonably prudent audit may have required bypassing Madoff and requesting supporting documentation from the market maker or the other party to the securities transaction. In any event, defendant has not established prima facie that it was not negligent in failing to obtain any confirmations of the existence of the securities which Madoff purportedly held, or the transactions which it purportedly executed, on Andover's behalf. Nor has defendant established prima facie that Andover would have lost its investment even if defendant had obtained such confirmations in the course of its audit process (Board of Trustees of IBEW Local 43 Elec. Contrs. Health & Welfare, Annuity & Pension Funds v D'Arcangelo & Co., LLP, 124 AD3d 1358 [4th Dept 2015]).

Defendant's argument addressed to the sufficiency of plaintiff's claim based upon Andover's holding the investment with Madoff is misplaced. The case cited by defendant concerns a fraud action against an issuer of securities rather than an action for accounting malpractice (Starr Found. v American Intl. Group, Inc., 76 AD3d 25 [1st Dept 2010]). Any other arguments not addressed herein are deemed to be without merit. Accordingly, defendants' motion for summary judgment dismissing the complaint is denied.