■ EMMANUEL RIVAS et al., Respondents-Appellants, v 1340 HUDSON REALTY CORP., Appellant-Respondent. [650 NYS2d 732] —Judgment of the Supreme Court, New York County (Louis York, J.), entered May 19, 1995, which, after a jury trial, awarded plaintiff damages in the amount of $280,064.45, unanimously reversed, on the law, without costs, and the matter remanded for a new trial.

This case involves the liability of the defendant landlord for damages allegedly sustained by a two-year-old child as a result of ingesting lead paint chips. In May or June of 1990, Margarita Castillo and her two sons, Manuel Rivas, age five, and Emmanuel Rivas, age two, moved into the four-bedroom apartment leased to and occupied by her father-in-law, Jose Rivas, to whom she paid rent. Almost immediately, Castillo noticed that Emmanuel was eating flaking paint chips that he found in the apartment. According to Castillo, she complained about this condition not only to the superintendent, who, she claimed, saw her move in, but also to the landlord when he made occasional visits to the building.

In late December 1990, as part of a campaign targeting certain neighborhoods for lead paint testing, a sanitarian from the Health Department's Bureau of Lead Poisoning came to the building and asked Castillo if she wanted her children to be tested for lead poisoning. The sanitarian observed many areas of peeling paint in the apartment, and tests showed that Emmanuel had a high level of lead in his blood. As a result, a notice of abatement was sent to the landlord in January 1991.

Castillo's account was disputed in several respects by Kenneth Gerstein, vice-president of the defendant corporation, which purchased the building in December 1988. As of November 1988, the building had been under the supervision of a 7A Administrator appointed by the Housing Court because the general condition of the premises had seriously deteriorated under its previous owner, leaving it in need of extensive

repairs, including new windows, plumbing and electrical work; also, many walls needed new sheetrock and plastering. Defendant undertook to make these repairs while the building continued under the 7A Administrator's control. Much of the building was repainted, a job that included scraping and plastering, and, as part of this ongoing work, apartment 62 was painted for the first time in 14 years. While there had been some lead paint problems under the previous owner, and Gerstein was required to correct them as part of the overall plan to fix the premises and as a condition to obtaining control from the 7A Administrator, none had been noted in apartment 62. The property was formally released to the defendant corporation in late 1989.

According to Gerstein, he had been to the doorway of apartment 62 to collect rent on three occasions in 1990, but it was not until the second or third visit, in November or December of 1990, that he realized that Castillo and her children were living there with Jose Rivas and Juan Rivas (plaintiff's uncle). From the doorway, he did not notice any peeling paint, nor did he ever receive any complaints, either directly or through the super, regarding peeling paint in the apartment. Gerstein had kept a detailed diary concerning the building's operations, including complaints received and repairs made. The diary contained no record of complaints of peeling paint in apartment 62. It was only upon receiving the notice of abatement in January 1991 that Gerstein became aware of the peeling paint condition, whereupon he undertook to remedy it by hiring a contractor to perform the necessary lead abatement work. Castillo and her children moved out for two months while the work was supposed to be done, and, although the work was not completed for several months after that, blood tests taken after December showed that the level of lead in Emmanuel's blood had declined. With respect to the effect of the ingestion of the paint chips, the parties' experts disagreed as to the injuries sustained by Emmanuel and the prognosis for his physical and intellectual development.

The court submitted two alternative theories of liability to the jury. The first was that the landlord was liable for plaintiff's alleged injuries under section 27-2013 of the Administrative Code of the City of New York, which requires that a landlord abate a lead paint hazard existing on premises occupied by a child six years of age and under; the second was that defendant was liable under a common-law negligence theory. In explaining these theories, the court instructed the jury that because lead paint had been found in apartment 62 and

because a child under the age of seven resided in the apartment, the statute had been violated and therefore "the only question left for you, the jury, to decide is whether the violation of the statute was a cause of plaintiff's damages." If so, the court directed, then the plaintiff would prevail under the so-called statutory theory. Accordingly, the first question on the jury verdict sheet was worded in the following manner: "Was the defendant's violation of the statute a substantial cause of the plaintiff's injuries?" The jury answered "yes" to this question. In addition, under the common-law negligence theory, the court charged the jury with respect to "comparative negligence" on the part of the adult family members in the apartment.

Defendant appeals on the issue of liability, while plaintiff cross appeals as to the amount of the award, arguing defendant should not have been allowed to elicit evidence regarding the building's renovation or to argue that the adult family members contributed in some way to Emmanuel's injuries. Under the Court of Appeals' recent decision in *Juarez v Wavecrest Mgt. Team* (88 NY2d 628), the court's charge was erroneous, and a new trial is required as to both liability and damages.

Local Laws, 1982, No. 1 of the City of New York, adding Administrative Code (Housing Maintenance Code) § 27-2013 (h) (1), provides that "[t]he owner of a multiple dwelling shall remove or cover in a manner approved by the department any paint or other similar surface-coating material having a reading of 0.7 milligrams of lead per square centimeter or greater or containing more than 0.5 percent of metallic lead based on the non-volatile content of the paint or other similar surface-coating material on the interior walls, ceilings, doors, window sills or moldings in any dwelling unit in which a child or children six (6) years of age and under reside." Paragraph (2) of Administrative Code § 27-2013 (h) further provides that in a building constructed prior to 1960, such as the building in question, peeling paint is presumed to contain hazardous levels of lead.

In *Juarez (supra)*, the Court of Appeals was asked to review this Court's finding that section 27-2013 (h) did not impose a standard of absolute liability; that, to avoid liability, a landlord could demonstrate its reasonable and diligent efforts to correct the hazard; and that the section imposes an affirmative duty on the part of the landlord to determine whether a child under the age of seven resides on its premises (*Juarez v Wavecrest Mgt. Team*, 212 AD2d 38). The Court of Appeals agreed that

the section did not impose absolute liability on the landlord, but concluded that there was no affirmative duty on the part of the landlord to ascertain the residence of a child under the age of seven.

The Court of Appeals began its analysis by restating the general rule that a landlord may be liable for injuries resulting from a dangerous condition on its property where "the landlord is under a statutory or contractual duty to maintain the premises in repair and reserves the right to enter for inspection and repair (*see, Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559, 565-566; *Worth Distribs. v Latham*, 59 NY2d 231, 238)" (88 NY2d 628, 642, *supra*). In New York City, landlords must safely maintain their premises in compliance with the various provisions of the Administrative Code (*see, Guzman v Haven Plaza Hous. Dev. Fund Co., supra*, at 566). In order to meet this burden under Local Law No. 1, however, the Court rejected plaintiff's argument that a landlord has an affirmative duty to ascertain whether a child under the age of seven lives in any of the landlord's units.

Unlike the administrative provisions that require the installation of window guards in units occupied by children under the age of 11 and specifically impose on the landlord the obligation to ascertain on a yearly basis—by written notice or inspection—whether such a child resides in any unit (*see,* Administrative Code § 17-123; 24 RCNY 12-03 [a], [c]), the lead abatement provision spells out no such obligation. Accordingly, the Court found, no such comparable affirmative obligation exists under Local Law No. 1.

In both *Juarez (supra)* and the instant case, the landlord disputed that it had notice of the infant plaintiff's residence; in both cases, too, the tenant of record was not the plaintiff's parent or guardian, and there was some question as to whether, because the lease prohibited subleasing, the parent might have had reason to keep the family's residency from the landlord. However, the jury in the instant case was not charged in any respect with regard to the landlord's knowledge of Emmanuel's residence.

While *Juarez* makes clear that a plaintiff must demonstrate that a landlord had actual or constructive notice of the child's residence, a landlord with such knowledge may be charged with notice of the presence of a lead hazard in that child's apartment. The Court of Appeals found that where a landlord retains the right to enter its leased premises, it may then be charged with constructive notice of a hazardous defect upon those premises. Such a right of entry, the Court observed, is

provided in the Administrative Code for the purpose of enabling a landlord to comply with Administrative Code provisions generally (§ 27-2008), and a landlord retains the right of entry for that purpose (to inspect and repair) under Local Law No. 1. Accordingly, the Court of Appeals found, a landlord with notice of an infant plaintiff's residence will thus be chargeable with constructive notice of the lead paint hazard in that particular unit, without regard to actual notice. Thus, while Gerstein maintains that he received actual notice of the hazard only by means of the January 1991 notice of abatement, he may be charged with constructive notice of the hazard as of the date that a jury finds he had actual or constructive notice of Emmanuel's residence. It is at that point, under *Juarez*, that compensable damages, if any, would begin to accrue.

Finally, as noted, the Court of Appeals stated that Local Law No. 1 does not impose a standard of absolute liability, "under which '[n]o excuse is recognized, and neither reasonable ignorance nor all proper care will avoid liability'" (88 NY2d 628, 643, *supra,* quoting Prosser and Keeton, Torts § 36, at 227 [5th ed]). Rather, as this Court had held, Local Law No. 1 imposes a standard of reasonableness, under which a landlord could show that the "hazard existed *despite* his diligent and reasonable efforts to prevent it" (212 AD2d 38, 48, *supra* [emphasis in original]). Thus, a landlord may prove that even if it violated Local Law No. 1, it will not be liable for damages sustained as a result of that violation if it exercised due care and acted reasonably under the circumstances (*Juarez v Wavecrest Mgt. Team, supra,* 88 NY2d, at 644). A landlord's code-imposed liability, therefore, may be relieved only by such efforts on its part, without regard for alleged negligence on the part of the apartment's occupants. Unlike *Juarez*, where the landlord did not contest the presence of a lead hazard or allege that it had made lead abatement efforts, the defendant here, over plaintiff's objection, presented evidence regarding its efforts to renovate the premises generally; its efforts to abate the lead hazard in apartment 62 specifically; and prior efforts (by the 7A Administrator or the previous owner) to address the lead paint problem identified elsewhere in the building. The jury was not allowed to consider any of this evidence on the so-called statutory cause of action, however, because of the court's instruction that the sole issue was causation. Concur—Milonas, J. P., Kupferman, Nardelli and Mazzarelli, JJ.