OPINION OF THE COURT
Arnold N. Price, J.
In this action for damages based on lead paint poisoning, plaintiffs move for partial summary judgment on the issue of liability.
In October 1992, plaintiff Ramona Allison moved into apartment 3-1 at premises located at 25-04 Beach Channel Drive, Far Rockaway, New York, with her two children, the infant plaintiff Rhykim Allison, who was then 11/2 years old, and her daughter, Nieisha Allison, then 10 years of age. The premises, which contained 12 apartment units, were owned by defendants. The apartment at issue was a one-room studio apartment.
In September 1993, as part of a routine blood test, the infant plaintiff was found to have severely elevated blood lead levels. A report of the lead poisoning was made to the New York City Department of Health’s Lead Prevention Program. Subsequently, on December 7, 1993, a sanitarian from the Department of Health was sent to the apartment to conduct an investigation. The sanitarian took 24 samples of paint and a water sample, and 13 of the paint samples tested positive for lead paint. The violations were found in various areas of the *482 apartment, including the front door, the window sills, the radiator, and the bathroom door. On December 17, 1993, the Department of Health issued an order to abate nuisance to defendants. The order informed defendants that a child with a blood lead level of 20 micrograms per deciliter or higher resided in apartment 3-1. The order stated that an inspection of the apartment revealed levels of lead in violation of New York City Health Code (24 RCNY) § 173.13 (c) and (d) and detailed the areas where the violations occurred. The order directed the defendants to correct the lead paint violations within five days.
In his examination before trial, defendant Joseph Wolfe testified that after receiving the order to abate nuisance, he called the Department of Health to find out how to correct the violations. Mr. Wolfe testified that he hired a contractor, who worked in the apartment for approximately one week, attempting to correct the violations. However, a subsequent Department of Health inspection report, dated January 10, 1994, indicated that all the violations still remained. At the examination before trial, defendant Joseph Wolfe stated that after the second inspection, the sanitarian informed him that the job was 80% to 90% complete. The City of New York subse- ' quently came in and abated the premises.
Plaintiffs subsequently commenced this action against defendants alleging that the infant plaintiff sustained severe and permanent injuries from lead paint as a result of defendants’ negligence. Plaintiffs now move for summary judgment on the issue of liability. In support of the motion, plaintiffs argue that there is no question of the dangerous nature of the subject premises as it was found to contain large amounts of lead-based paint. Plaintiffs also assert that defendants were aware that a child under the age of seven resided in the apartment at issue. Plaintiffs contend that under the recent Court of Appeals case of Juarez v Wavecrest Mgt. Team (88 NY2d 628) they are entitled to summary judgment.
In opposition to the motion, defendants argue that upon notification of the lead paint violations in the apartment, they took immediate steps to remedy the situation. Defendants state that they hired a contractor, who was supposedly knowledgeable about lead repair and removal to correct the violations. Defendants maintain that plaintiffs’ motion must be denied since there is a question of fact regarding the reasonableness of defendants’ actions in remedying the violations.
Section 27-2013 (h) (1) of the Administrative Code of the City of New York (Local Laws, 1982, No. 1 of City of New York), *483 commonly referred to as "Local Law 1”, was enacted in 1982 in response to the growing problem of lead paint poisoning. This statute, which is part of the Housing Maintenance Code, provides that: "[t]he owner of a multiple dwelling shall remove or cover in a manner approved by the department any paint or other similar surface[-]coating material having a reading of 0.7 milligrams of lead per square centimeter or greater or containing more than 0.5 percent of metallic lead based on the nonvolatile content of the paint or other similar surface-coating material on the interior walls, ceilings, doors, window sills or moldings in any dwelling unit in which a child or children six (6) years of age and under reside.”
Subdivison (2) of section 27-2013 (h) creates a rebuttable presumption that in any unit in a multiple dwelling erected prior to January 1, 1960 where a child six years of age or under resides, any peeling paint contains a hazardous level of lead. In addition, subdivision (3) of section 27-2013 (h) provides that the existence of lead paint above the stated threshold in a dwelling unit where a child under the age of seven resides constitutes a class C immediately hazardous violation.
The Court of Appeals was recently faced with its first opportunity to address the issue of a landlord who has failed to comply with the lead abatement provisions of the Administrative Code in Juarez v Wavecrest Mgt. Team (88 NY2d 628, supra). In Juarez, a two-year-old plaintiff was diagnosed with lead poisoning after residing in an illegal sublet with her mother and sister. The Department of Health found that paint samples in the apartment tested positive for lead paint. The Court of Appeals reversed the First Department’s award of partial summary judgment to plaintiff. The Court, while stating that Local Law 1 imposes a duty on landlords to abate a lead hazard, rejected plaintiffs’ argument that violation of Local Law 1 results in absolute liability. (Juarez v Wavecrest Mgt. Team, supra, 88 NY2d, at 643-644.)
In reaching its decision, the Court stated that for lead paint to constitute a hazard, there must be lead in an amount exceeding the stated threshold and a child six years of age or under must reside in the apartment. The Court explained that for a landlord to be liable for injuries caused by lead paint, he must have actual or constructive notice of both the hazardous lead condition and the residency of a child six years of age or under (Juarez v Wavecrest Mgt. Team, supra, 88 NY2d, at 646). The Court further held that once a landlord has notice that a child under the age of seven resides in the apartment, then he will *484 have constructive notice of the hazardous lead condition. (Juarez v Wavecrest Mgt. Team, supra, 88 NY2d, at 647; see also, Rivas v 1340 Hudson Realty Corp., 234 AD2d 132.) The Court explained that Local Law 1 gives landlords the authority to enter dwelling units occupied by children under the age of seven to inspect for and repair a lead paint defect. (See, Administrative Code § 27-2008.) The Court reasoned that since a building owner may be charged with constructive notice of defects in those parts of a building into which it has authority to enter, then the right of entry conferred by Local Law 1 gives a landlord constructive notice of any lead paint hazard in an apartment that the landlord knows is occupied by a child under age seven (Juarez v Wavecrest Mgt. Team, supra, 88 NY2d, at 647). The Court found, though, that there was a triable issue as to whether the landlord had actual or constructive notice that a child under the age of seven lived in the apartment.
The Court of Appeals further held that Local Law 1 imposes " 'a standard of reasonableness’ ” that permits the landlord to demonstrate that the " lead paint hazard existed despite his diligent and reasonable efforts to prevent it’ ”. (Juarez v Wavecrest Mgt. Team, supra, 88 NY2d, at 644.) The Court explained that a landlord could avoid liability by proving that, though he violated Local Law 1, he acted reasonably under the circumstances. The Court further noted that the provisions of the Administrative Code at issue here do not indicate an intent to impose liability without regard to fault.
In the matter at hand, it is clear that defendants had notice that a child under the age of seven resided in the apartment at issue. In his deposition, defendant Joseph Wolfe stated that he was aware that Mrs. Allison had a son named Rhykim Allison. Upon being asked if he was aware that the child was under the age of seven when he first became a tenant, Mr. Wolfe replied "probably.” Moreover, Mr. Wolfe testified that he put up window guards in plaintiffs’ apartment, which is required if a child 10 years of age or under resides in the apartment. (Administrative Code § 17-123; NY City Health Code [24 RCNY] § 131.15 [a].) Thus, defendants knew that a child under the age of seven could have been living in the apartment. (See, Nwaru v Leeds Mgt. Co., — AD2d —, 1997 NY Slip Op 01343 [1st Dept, Feb. 11, 1997].) Furthermore, Mr. Wolfe testified that he visited plaintiffs’ apartment every other week to collect rent. He also testified that his son, codefendant Michael Wolfe, collected rent at times and probably entered plaintiffs’ apart *485 ment. Therefore, defendants were on notice that a child under the age of seven lived in the subject apartment and under the principles set forth in Juarez (supra) had notice of the hazardous lead condition.
Defendants argue that plaintiffs are not entitled to summary judgment because there is an issue of fact regarding the reasonableness of defendants’ actions in remedying the lead paint hazard. Defendants contend that under Juarez (supra), a landlord will not be held liable if he acted reasonably under the circumstances. The court finds this argument to be without merit. Here, defendants’ abatement efforts occurred after they received the order to abate nuisance in December 1993. Since defendants had constructive notice of the lead paint condition in the apartment, they were obligated to remedy it prior to receiving any notice from the Department of Health and prior to the lead paint poisoning of the infant plaintiff. Any abatement efforts that occur subsequent to the lead paint poisoning are insufficient for defendants to avoid liability. Any other interpretation of Local Law 1 would render its abatement provisions meaningless.
There is no indication in the record that defendants herein were acting reasonably under the circumstances. There is no evidence that defendants sought to abate the hazardous lead condition prior to December 1993. Defendant Joseph Wolfe testified at his deposition that he did not paint plaintiffs’ apartment before they moved in in October 1992. He merely supplied plaintiff Ramona Allison with the materials necessary for her to paint the apartment, if she desired. These actions were insufficient and unreasonable under the circumstances.
Accordingly, plaintiffs’ motion for partial summary judgment on the issue of liability is granted.