*52 OPINION OF THE COURT
Herbert Kramer, J.
Does a landlord, who is placed on constructive notice of a lead paint hazard under Local Laws, 1982, No. 1 of the City of New York (Local Law l),[1] remain on notice until the hazard is abated?
Under Local Law 1, a landlord is placed on constructive notice of a lead paint hazard in an apartment built before 1960 that the landlord knows is occupied by a child under the age of seven. Here, although defendant New York City Housing Authority (NYCHA) was aware of the presence of its tenant’s children in this pre-1960 apartment, it claims lack of notice on the ground that the youngest known resident child had previously reached the age of seven and it was unaware of the presence of the infant plaintiff. Defendant thus seeks summary judgment.[2]
“Local Law 1 places a specific duty on landlords to abate lead paint in leased premises where children under the specified age reside”. (Juarez v Wavecrest Mgt. Team, 88 NY2d 628, 647 [1996].) Under the provisions of Local Law 1, the landlord’s duty to abate lead paint and the presumption with respect to the presence of hazardous lead paint in a pre-1960 apartment is triggered when the landlord receives actual or constructive notice of occupancy of a child under the age of seven. (Rivas v 1340 Hudson Realty Corp., 234 AD2d 132 [1st Dept 1996]; accord, Mendez v Davana Realty Corp., NYLJ, Dec. 19, 1997, at 29, col 6 [Sup Ct, NY County].)
*53 As to our question, law and logic dictate the response that the landlord who is placed on notice of a lead paint hazard by virtue of the constructive notice provisions of Local Law 1 remains on notice until the hazard is abated and runs to any child who may be affected by the hazard. This is because the statutory duty to abate the hazard stems from the correlative statutory right granted to landlords to “enter dwelling units occupied by such children for the very purpose of inspecting for and repairing a lead paint defect” (Juarez v Wavecrest Mgt. Team, supra, at 647 [emphasis added]), and, this court holds, does not flow from the presence of a specific child on the premises or run exclusively for the benefit of such child.[3] (Accord, Mendez v Davana Realty Corp., NYLJ, Dec. 19, 1997, at 29, col 6 [Sup Ct, NY County], supra.)
Further, notice of a lead paint hazard like notice of inadequate heat or hot water {see, Administrative Code former § D26-51.01 [k], now Administrative Code §27-2115 [k]) addresses a health hazard which must be corrected. A presumption of continuation is afforded the tenant in the case of heat or hot water violations in order to relax the tenant’s burden of proof and encourage the alleviation of the problem. (See, Department of Hous. Preservation & Dev. v De Bona, 101 AD2d 875 [2d Dept 1984]; Matter of Department of Hous. Preservation & Dev. v Deka Realty Corp., 208 AD2d 37, 46 [2d Dept 1995].) A fortiori, the very same presumption is applicable to the Local Law 1 notice provisions.
Here, window guard forms filed by the tenant provided actual notice of the occupancy of children less than seven years of age. (See, Nwaru v Leeds Mgt. Co., 236 AD2d 252 [1st Dept 1997].) Sworn testimony submitted by the plaintiff in opposition to this motion evidences the fact that the tenant made complaints about peeling paint. The notice of peeling paint in this apartment constituted constructive notice of a lead paint hazard which remained unabated and became the subject of a *54 Health Department order issued after Desi was diagnosed with EBL. Since notice continues until the hazard is abated and runs to any affected child, the defendant had constructive notice of the lead paint hazard with respect to the infant plaintiff even assuming arguendo that the defendant was unaware of his presence in that apartment and despite the fact that the youngest known resident child had reached the age of seven.
Accordingly, the defendant’s motion for summary judgment is denied.[4]

. Local Law 1 (Administrative Code of City of NY §27-2013 [h] [2]) provides in pertinent part: “In any multiple dwelling erected prior to January first, nineteen hundred sixty in which paint or other similar surface-coating material is found to be peeling on the interior walls, ceilings, doors, window sills or moldings in any dwelling unit in which a child or children six (6) years of age or under reside, it shall be presumed that the peeling substance contains more than 0.5 percent of metallic lead based on the nonvolatile content of the paint or other similar surface-coating material or having a reading of 0.7 milligrams of lead per square centimeter or greater.”

. The NYCHA apartment in question is leased to Annie Reed, who resides there with her two sons, Frederick Reed, bom in 1971, and Darwin Reed, bom on September 5, 1980. Desi, who was bom on February 11, 1987, lived in the NYCHA apartment for first two months of his life and according to Desi’s mother, continued to visit the apartment frequently thereafter. Annie Reed and Rebecca Reed complained about peeling paint before the Department of Health inspectors came to the apartment and Rebecca Reed saw Desi place paint chips in his mouth when he was about eight or nine months old. Desi was diagnosed with EBL on January 9, 1989. The Department of Health sent the NYCHA a notice to abate on October 31, 1989.

. Indeed, unless the notice is understood to continue until the hazard is abated, it could well be argued that the duty to abate is extinguished when the youngest child living in the apartment reaches the age of seven. This interpretation might well encourage landlords to avoid making necessary repairs until the youngest child comes of age thus endangering guests and children of successor tenants. Such a result is at odds with the purpose of this legislation which is aimed at alleviating the “ ‘most significant environmental disease in New York City, in terms of the numbers of cases, the severity of the medical damage created, and the personal, social, and economic costs it imposes’ ”. (Juarez v Wavecrest Mgt. Team, supra, 88 NY2d, at 641.)

. The defendant’s remaining contentions speak to factual issues that are best resolved by a jury.