## Casella Constr. Corp. v 322 E. 93rd St. LLC

2024 NY Slip Op 31966(U)

June 5, 2024

Supreme Court, New York County

Docket Number: Index No. 155098/2017

Judge: Verna L. Saunders

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. VERNA L. SAUNDERS, JSC**            PART    36
                                          *Justice*

-------------------------------------------------------------------X

CASELLA CONSTRUCTION CORPORATION,
                          Plaintiff,

                - v -

322 EAST 93RD STREET LLC and
324 E. 93 LLC,
                          Defendants.

-------------------------------------------------------------------X

322 EAST 93RD STREET LLC,
                          Counterclaimant

                - v -

324 E. 93 LLC,
                Additional Counterclaim Defendant.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 155098/2017 |
| MOTION SEQ. NO. | 007 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 007) 292, 293, 294, 295, 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 323, 324, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389

were read on this motion to/for                    **SUMMARY JUDGMENT**                    .

A six-alarm fire at 324 East 93rd Street on October 27, 2016, brought about this action. The owner of the building, 324 E. 93 LLC ("324"), moves for summary judgment dismissing the counterclaims by the owner of the adjacent building at 322 East 93rd Street. The owner of the adjacent building, 322 East 93rd Street LLC ("322"), cross-moves for summary judgment on liability against 324.

The main action in this case concerns work which was performed by plaintiff Casella Construction Corp. to remedy fire damage. Casella's claim to enforce a lien against 322 has been voided and discharged (*Casella Constr. Corp. v 322 E. 93rd St. LLC*, 211 AD3d 458 [1st Dept 2022]).

The buildings at 322 East 93rd Street and 324 E. 93rd St. shared a party wall. The fire damaged both buildings, 324 to the extent that it was demolished by the order of the New York City Department of Buildings (NYC DOB). 322 brings claims for property damage against 324 on the ground that 324's negligence caused the fire. 322 alleges that fire, smoke, and water damaged the entirety of its premises, and that the roof was destroyed (NYSCEF Doc. No. 163, BOP, ¶¶ 5, 6).

Lemmy Thuku, a tenant at 324 E. 93rd St., died in the fire. The Office of the New York City Medical Examiner determined that the cause of death was smoke inhalation. The estate of Lemmy Thuku brought an action for wrongful death and negligence against 324; Perry Gault Management Co., Inc. ("Gault"), the managing agent of 324; and David Shepherd ("D. Shepherd") and Ashley Shepherd ("A. Shepherd"), tenants in apartment 1W at 324 (*Timothy Thuku as the Administrator of the Estate of Lemmy Thuku v 324 E. 93 LLC, Perry Gault Management Co., Inc., David Shepherd, and Ashley Shepherd,* Index No. 452203/2018, Supreme Court, New York County). Fire Marshal Kenneth Hettwer of the New York City Fire Department, the primary investigator, determined that the fire started in the Shepherds' apartment (NYSCEF Doc. No. 294, *Fire Incident Report, February 1, 2017*).

On its instant summary judgment motion, 324 contends that a decision in the *Thuku* case collaterally estops 322 from making the same arguments in this case.

322 was not a party in *Thuku.* 324 and Gault, defendants in *Thuku,* moved for summary judgment dismissing plaintiff Thuku's complaint and plaintiff cross-moved to strike defendants' answer for spoliation of evidence and for summary judgment on liability against them. Key to deciding the motions was whether defective electrical wiring in 324 caused the fire and whether the door to apartment 1W was defective and contributed to the fire spreading to the rest of the building. On April 12, 2022, J. Kahn issued a determination on the motions (*Thuku v 324 E. 93 LLC,* 2022 NY Slip Op 31267[U] [Sup Ct, NY County 2022]; NYSCEF Doc. No. 317).

Under New York City Administrative Code § 27-371[b], a door to an interior corridor must be self-closing, and under § 27-2041.1 of the code it is the duty of the owner of a multiple dwelling to equip it with self-closing doors. J. Khan denied that part of 324's and Gault's motion that was based on the argument that the door was closed during the fire, finding that the defendants failed to eliminate issues of fact as to whether the door was self-closing, given that witnesses made contradictory statements about whether the door would habitually close on its own and whether it was closed during the fire. Also, while 324 and Gault demonstrated actual lack of notice of a defect in the door, they did not demonstrate lack of constructive notice. Otherwise, 324's and Gault's motion was granted as to Thuku's other bases of liability, which were all dismissed. Thuku's cross-motion for summary judgment was denied, as was the motion to strike 324's and Gault's answer for spoliation.

The *Thuku* decision included extensive discussions of the evidence, including that from experts and party and non-party witnesses. The court quoted the part of the Fire Incident Report that bore the heading "Origin and Extension":

Examination showed that fire originated in the subject premises, on the first floor, in apartment 1-W, in the living room approximately one foot from the north wall and one foot from the west wall at floor level in a combustible material (electrical cord insulation) . . . Fire further extended to the public hallway through the apartment door. Fire further extended to the walls and ceiling of the first floor public hallway. . . Fire further extended to the second, third, fourth and fifth floor apartments via the interior stairs and auto exposure from the shafts. . . . Fire further extended to the light/air shaft on the exposure four side via windows to shaft. Fire further extended to the second, third, fourth and fifth

floor via auto exposure. Fire extended to the bottom of the west light shaft via drop down. Fire extended to the basement via window. Fire further extended to the light/air shaft on the exposure four side via windows to shaft . . . .

Fire further extended to all floors of 326 and 322 East 93rd Street with extension to the shaft rooms of the structure.

(*Thuku*, 2022 NY Slip Op 31267[U], *1; NYSCEF Doc. No. 294).

As noted in *Thuku*, during his deposition, Hettwer confirmed that the report stated "Electrical" under the title "Cause of Fire". Under the title "Description", the report notes "NFA in the area of electrical wiring - extension cords and power strips." Hettwer testified that "NFA" is an acronym for "not further ascertained" which in that context meant that no further testing or evaluation of the electrical wiring was performed. He stated that he could not opine exactly which electrical item, power strip, extension cord, wire molding or electrical appliance — in the fire origin area caused the fire. Hettwer stated that his "degree of confidence" in his conclusion that the cause of the fire was "electrical NFA" was "[o]ver 51 percent" (*Thuku*, 2022 NY Slip Op 31267[U], *14-15).

324 became owner in 2007. The Shepherds moved into apartment 1W in 1991. Not long after moving in, D. Shepherd approached the then landlord about renovating the electrical system in the kitchen and the wiring in 1W. The landlord chose the licensed master electrician who did the work and who was assisted by D. Shepherd. Part of the work was installing a breaker box in the kitchen. The breaker box in the kitchen contained individual breakers for the washer, dishwasher, refrigerator, and a living room outlet. Also, five outlets were installed in 1W, four in the kitchen and one in the living room, each with a separate breaker in the kitchen box. D. Shepherd stated that electrical cable was run through the drop ceiling for the added outlets. A wire was run from a breaker that came off the electric meter to the new kitchen breaker box. D. Shepherd said that no permit was obtained for the work (*Thuku*, 2022 NY Slip Op 31267[U], *4-5).

D. Shepherd "offered confused testimony regarding the location of outlets, power strips, extension cords, where each ran and where the electrical appliances were plugged in" (*Thuku*, 2022 NY Slip Op 31267[U], *4). He testified that when they moved into 1W in 1991, there was a wire molding affixed to the living room wall that ran to an external two-plug outlet located either behind a dresser or under a window. He stated that into the external outlet they connected an air-conditioner via a short extension cord and a power strip connected to, at various times, a computer, lamp and perhaps, a fan. Other electrical equipment in the living room included a television, a stereo, a printer, an overhead light fixture, a floor lamp, a table lamp, and possibly, two fans. He stated that the television and stereo were connected by extension cord via a ten to twelve-foot appliance-style extension cord that ran through the wall into the closet where the washer and dryer were located. He claimed they never had any problems with the wire molding or its living room outlet (*id.*).

The extension cords and power strip were provided and installed by the Shepherds (*Thuku*, 2022 NY Slip Op 31267[U], *17).

**155098/2017   CASELLA CONSTRUCTION vs. 322 EAST 93RD STREET LLC**
**Motion No. 007**

**Page 3 of 9**

The court found that 324 and Gault established *prima facie* that they did not neglect their duty with respect to the electrical system in apartment 1W, and that the internal wiring in the building was not the cause of the fire (*Thuku*, 2022 NY Slip Op 31267[U], *16). 324 and Gault showed that the electrical service in the building was neither insufficient, nor defective, that the fire originated in the "extension cord/power strip" installed by the Shepherds, and that 324 and Gault had no notice of any electrical defects in 1W (*id.*).

The court in *Thuku* reasoned that "[p]laintiff's position that [d]efendants had a duty to perform a comprehensive upgrade of the electrical system on the entire building is entirely unsupported by any statute, code rule or regulation" (*Thuku,* 2022 NY Slip Op 31267[U], *16). It supported its rationale on the legal premise that the owner of a building constructed in compliance with code specifications and industry standards applicable at the time has no duty to alter the building to match changed standards (see *Hotaling v City of New York*, 55 AD3d 396, 397 [1st Dept 2008]) (*id.*).

Thuku's claims based upon the absence or insufficiency of fire-stopping materials and absence of a sprinkler system were found defective as a matter of law. The building and fire codes cited by Thuku did not apply to the building due to its age, and 324 and Gault satisfied their statutory duty to install smoke detectors in the apartments (*Thuku*, 2022 NY Slip Op 31267[U], *17).

The court denied Thuku's cross-motion to strike defendants' answer for spoliation. Thuku claimed that defendants demolished the building and disposed of its contents and that Thuku was never given the opportunity to examine the building and its contents, while defendants' experts were on the scene for over a week and had a full opportunity to examine, recover, and preserve evidence (NYSCEF Doc. No. 316, Motion for Summary Judgment, Papers in *Thuku* Action, affirmation in opposition and in support of cross-motion, ¶ 103).

The court stated that the building was clearly key evidence. However, plaintiff failed to demonstrate that the demolition of the building pursuant to a NYC DOB mandate was an intentional attempt to hide or destroy evidence or a negligent destruction of evidence that defendants had a duty to preserve. Moreover, the court determined the record did not show that plaintiff was left prejudicially bereft of the ability to prosecute the action as it could still rely on witness testimony. Plaintiff could also rely on the non-partisan and extensive fire investigation record of the FDNY and the lengthy deposition testimony of the primary investigating fire marshal (*Thuku*, 2022 NY Slip Op 31267[U], *20).

324's instant motion argues that the decision in the *Thuku* case should collaterally estop 322 from relitigating the same issues. 322 urges that collateral estoppel does not lie against it, but rather against 324, which should be bound by the decision in the *Thuku* case that the condition of the door presents an issue of fact.

The doctrine of collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity" (*Buechel v Bain*, 97 NY2d 295, 303 [2001], *cert denied* 535 US 1096 [2002]). Collateral estoppel bars the relitigation of an issue of fact or law already litigated and

[* 4]

resolved in a court determination essential to the prior judgment (see *Paramount Pictures Corp. v Allianz Risk Transfer AG*, 31 NY3d 64, 72 [2018]; *Korea First Bank of N.Y. v Noah Enters., Ltd.*, 12 AD3d 321, 323 [1st Dept 2004]). The doctrine applies when the issues in both proceedings are identical, there was a full and fair opportunity to litigate in the prior proceeding, and the issue previously litigated was necessary to support a valid and final judgment on the merits (see *Conason v Megan Holding, LLC*, 25 NY3d 1, 17 [2015]).

A grant of summary judgment is a final judgment on the merits for res judicata or collateral estoppel purposes, while a denial of summary judgment is not (see *Neighborhood Partnership Hous. Fund v Blakel Constr. Corp.*, 34 AD3d 303, 303-304 [1st Dept 2006]). The part of 324's motion in *Thuku* concerning the door was denied on the basis that there was an issue of fact whether the door was defective. That denial does not operate as collateral estoppel to prevent 324 from relitigating the issue about door.

As 322 was not a party in *Thuku*, for it to be collaterally estopped from relitigating the issues litigated by the plaintiff in that case, 322 must have been in privity with said plaintiff (see *Buechel*, 97 NY2d at 304). 324 argues that 322's and Thuku's interests are sufficiently aligned for privity to exist between them, since both present the same arguments in favor of 324's liability for the fire, and for either party to prevail 324 must be found liable for the fire.

Privity is "an amorphous concept not easy of application" (*Juan C. v Cortines*, 89 NY2d 659, 667 [1997]). It requires a legal or practical connection between two parties such that one party's opportunity to be heard on the issue under litigation will protect the due process rights of the other party (see *RevPoint Media, LLC v Plural Mktg. Solutions, Inc.*, 80 Misc 3d 1226[A], 2023 NY Slip Op 51101[U], *4 [Sup Ct, NY County 2023]). Having the same interests or the same claims to prove is not necessarily a sufficient connection (see *id.*, *4-5). Generally, privity requires a more formal relationship, such as that between a union and a member or insurer and insured (*id.*). Privity encompasses "those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action" (*Cortines*, 89 NY2d at 667).

322 and Thuku have no relationship that can be termed formal, and one case is based on wrongful death and the other on property damage. Nevertheless, there is a danger that decisions in this case and in *Thuku* may run afoul of the policies underlying the collateral estoppel doctrine. Both parties have an interest in showing that 324 is liable for the fire. They have employed the same expert, Michael Cronin. For the most part, they raise identical issues supported by identical evidence. The purpose of collateral estoppel is to avoid relitigation of a decided issue and the possibility of an inconsistent result (*Buechel*, 97 NY2d at 303). It is an equitable doctrine, "grounded on concepts of fairness and should not be rigidly or mechanically applied" (*D'Arata v New York Cen. Mut. Fire Ins. Co.*, 76 NY2d 659, 664 [1990]). "What is controlling is the identity of the issue which has necessarily been decided in the prior action or proceeding" (*Ryan v New York Tel. Co.*, 62 NY2d 494, 500 [1984]; see *All Terrain Props., Inc. v Hoy*, 265 AD2d 87, 93 [1st Dept 2000]). The issue determined in the previous action must be the issue to be determined in the second action, such that "a different judgment in the second would destroy or impair rights or interests established by the first" (*Ryan*, 62 NY2d at 501 [internal citation and quotation marks omitted]).

Equity demands that the same issues backed by the same evidence not be redecided in this case. Where 322 has a different argument and/or different evidence, that will be considered. Otherwise, there is a risk of inconsistent decisions which could impair the rights of one or both parties. In addition, it is a waste of judicial resources to litigate the same issues twice.

In *Thuku*, 324 showed that it had no notice of a dangerous condition in 1W, that defective electrical service in the building did not cause the fire, that deficiency of fire-stopping devices in the building did not cause the fire, that it did not create the electrical condition that caused the fire, and that it did not spoliate evidence. 322 is precluded from relitigating the issues and the supporting evidence used in *Thuku*.

The party moving for summary judgment must submit evidence demonstrating that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law (see *Dallas-Stephenson v Waisman*, 39 AD3d 303, 306 [1st Dept 2007]). Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers." (*Cugini v System Lbr. Co.*, 111 AD2d 114, 115 [1st Dept 1985]). Once the moving party has satisfied these standards, the opposing party must rebut that prima facie showing, by producing contrary evidence in admissible form, sufficient to require a trial of material factual issues (see *Amatulli v Delhi Constr. Corp.*, 77 NY2d 525 [1991]). The party opposing the motion for summary judgment is given the benefit of all favorable inferences (*Cetindogan v Schuyler*, 95 AD3d 577, 578 [1st Dept 2012]).

324 argues that there is no basis to conclude that the door to 1W would not close on its own and thus, contributed to the fire spreading to 322 E. 93rd St. However, witnesses stated that the door would close, that the door would close sometimes, and that the door would not close. Hettwer testified that some firefighters informed him that the door to 1W was open when they arrived upon the scene (NYSCEF Doc. No. 302, at 258). Given the inconsistent evidence, 324 fails to make a prima facie case that the door functioned properly.

Next, 324 claims that the fire did not spread to 322 E. 93rd St. via the door to 1W; rather, the flames reached 322 through the air/light shaft common to both buildings. Therefore, even if the door was not self-closing, said defect was not the reason for fire damage to 322.

Evidence exists for 324's argument. An FDNY investigator observed that "322 East 93rd has slight heavy fire damage on all rooms that have a window on the common light shaft" (NYSCEF Doc. No. 315, Fire Incident Report Interviews, at 18). Fire came into 322 E. 93rd St. from a window on the shaft (*id.* at 10). "Fire further extended to all floors of 326 and 322 East 93rd Street with extension to the shaft rooms of the structure" (NYSCEF Doc. No. 294, Fire Incident Report). "Fire had communicated to [322 E. 93rd St.] apartments via the shared shaft with the fire building & auto-exposure" (NYSCEF Doc. No. 337, Fire Incident History Report, at 6).

At the time of the fire, the Shepherds were away and some friends were staying at the apartment. Hettwer explained what prompted him to ask the people staying at 1W whether the door closed behind them when they departed after the fire started (NYSCEF Doc. No. 302, at 252-253). "I examined the fire dynamics, the front door being open and eventually the shaftway

[* 6]

windows being compromised, contributed to the fire dynamics of the fire coming — air being brought in through the lower apartments and then spreading up the shaftway and up the stairs, similar to a chimney" (*id.* at 253).

Even if the fire reached 322 E. 93rd St. from the shaft only, the above evidence indicates that the fire's passage to and through the shaft could have been facilitated by 1W's open door. 324 fails to present a prima facie case that the failure of the door to operate correctly did not contribute to the spread of the fire from 324 E. 93rd St. to 322 E. 93rd St. Accordingly, 324's motion for summary judgment is denied.

Turning next to 322's cross-motion, 322 argues that the Shepherds' lease gave 324 constructive notice of the dangerous condition in 1W which resulted in the fire and that, under the lease, 324 had a duty to inspect 1W. By failing to inspect, 324 consented to the creation of the dangerous condition. Arguments based on the lease were not raised in *Thuku*.

In 1991, the Shepherds and the then owner entered into a lease, section 15 of which provides the following: "During reasonable hours and with reasonable notice, . . . Owner may enter the Apartment (A) To erect, use and maintain pipes and conduits in and through the walls and ceilings of the Apartment; to inspect the Apartment and to make any necessary repairs Owner decided are necessary" (NYSCEF Doc. No. 329, ¶ 15[A]). The section continues, "that if at any time you are not personally present to permit Owner to enter and entry is necessary or allowed by law or under the lease, Owner may nevertheless enter the Apartment" (*id.*, ¶ 15[E]).

Section 10 of the lease provides that, without the owner's prior written consent, the tenant "cannot install or use in the apartment any of the following: dishwasher machines, clothes washing or drying machines, electric stoves, garbage disposal units, heating, ventilating, or air conditioning units or any other electrical equipment which in the Owner's reasonable opinion, will overload the existing wiring installation in the Building or interfere with the use of such electrical wiring facilities by other tenants of the Building" (NYSCEF Doc. No. 329, ¶ 10).

322 contends that the purpose of these provisions was to preclude the creation of the sort of dangerous condition in 1W which caused the wiring to overload and burn. 322 states that the building at 324 was built many decades ago during a different technological age. Since then, the number of outlets in each unit has become insufficient for modern electrical devices. 322 points to 324's statement that the dangerous condition which started the fire in 1W was the "overload [of] an electrical outlet with a lamp, a multi-plug power strip, computer equipment, a fan, a lamp, a bike charger, and an additional extension cord that supplied electricity to a computer and other entertainment equipment" (NYSCEF Doc. No. 319, *324's memorandum of law*, at 1).

In *Thuku*, 324 showed it had no notice of any dangerous condition in 1W. Now, 322 raises the question whether 324 had notice pursuant to the lease, along with a duty to inspect, and whether 324 consented to the dangerous condition by not objecting to the appliances and other electrical devices in 1W for which, under the lease, the tenants should have received prior written consent.

**155098/2017   CASELLA CONSTRUCTION vs. 322 EAST 93RD STREET LLC**
**Motion No. 007**

322 claims that the Shepherds did not have consent to install the devices that overloaded the existing wiring installation in the building, and that 324 had a duty under the lease to inspect the apartments for those devices. If 324 had fulfilled its duty, it would have seen the dangerous condition in 1W. Moreover, 322 states, not only did the lease give 324 constructive notice of the condition, 324 also received actual and constructive notice by virtue of the air conditioning unit in 1W's window that could be plainly seen from the outside of the building. 324 did not need to enter 1W to see that the apartment had air conditioning.

322's expert, Michael Panish, asserts that the overloading as described by 324 would have tripped the circuit breaker if it had been functioning properly, thereby preventing the overheating of the wires which resulted in the fire (NYSCEF Doc. No. 373, ¶¶ 18-20). He asserts that documents and testimony indicate that 1W's circuit breaker/fuse box was defective or had been altered to allow more electricity to flow without tripping the circuits.

An owner may be liable for a defective condition not of its own making, if it "had actual or constructive notice of the condition for such a period of time that, in the exercise of reasonable care, it should have been corrected" (*Golden v Manhasset Condominium*, 2 AD3d 345, 347 [1st Dept 2003], quoting *Juarez v Wavecrest Mgt. Team,* 88 NY2d 628, 646 [1996]). Where a landlord retains the right to enter its leased premises to inspect and repair, it may then be charged with constructive notice of a hazardous defect upon those premises (see *Velsini v Cadmus*, 152 FRD 442, 446 [ND NY 1994]; *Rivas v 1340 Hudson Realty Corp.*, 234 AD2d 132, 135-136 [1st Dept 1996]). A landlord who is under a statutory or contractual duty to maintain the premises in repair and who reserves the right to enter for inspection and repair may be liable for injuries resulting from a dangerous condition on its property air (see *Juarez*, 88 NY2d at 628).

In this case, section 15 of the lease gave 324 the right to enter the premises to inspect and repair. 324 argues that the lease only applies to inspection and repair of pipes and conduits. Assuming, however, that 322 is correct and the right to inspect and repair pertains to all aspects of the apartment, its motion cannot be granted because it is not clear that an overload caused the fire.

The Fire Incident Report stated that the fire started "in combustible material (electrical cord insulation)" and "NFA in the area of electrical wiring - extension cords and power strips" (NYSCEF Doc. No. 294). Hettwer ruled out the outlet near the fire origin area as the origin of the fire (NYSCEF Doc. No. 339, at 136-137, 138, 139). He testified "that he could not opine exactly which electrical item, [whether] power strip, extension cord, wire molding or electrical appliance - in the fire origin area caused the fire" (*Thuku*, 2022 NY Slip Op 31267[U], *12). He did not state that an overload caused the fire. Hettwer said that the people staying at 1W did not indicate any problems with the circuit breakers tripping due to overload or anything else (NYSCEF Doc. No. 340, at 262).

322 does not submit evidence that an overloaded electrical outlet caused the fire, and the *Thuku* court did not arrive at such a decision. The above quoted statement from 324's memorandum of law is not supported by evidence in the record. Therefore, the court cannot determine that if 324 had inspected the apartment, it would have seen a dangerous condition in the form of an electrical outlet with too many items plugged into it. Nor is there evidence that a

circuit breaker was defective or that a fire would not have started unless a circuit breaker was defective. The statement by 322's expert is unsupported by reference to facts in the record and is speculative and conclusory (see *Saborido-Calvo v New York City Tr. Auth.*, 11 AD3d 216, 216 [1st Dept 2004]). Therefore, the cross-motion is denied. Accordingly, it is

**ORDERED** that the motion for summary judgment by additional counterclaim defendant 324 E. 93 LLC and the cross-motion for summary judgment by counterclaimant 322 E. 93rd Street LLC for summary judgment are denied; and it is further

**ORDERED** that, within twenty (20) days after this decision and order is uploaded to NYSCEF, counsel for 324 E. 93 LLC shall serve a copy of this decision and order, with notice of entry, upon all parties.

This constitutes the decision and order of this court.

_____
**June 5, 2024**

_____
**HON. VERNA L. SAUNDERS, JSC**

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

[* 9]